IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

STEPHEN R. CRIBBS,        )
                          )
        Plaintiff,        )
                          )
v.                        )    CASE NO. CV411-263
                          )
NFI INDUSTRIES, INC. and NFI )
NETWORK LOGISTIC SOLUTIONS, )
LLC,                      )
                          )
        Defendants.       )
                          )

## O R D E R

Before the Court are Plaintiff's Motion to Strike
Portions of Defendants' Statement of Undisputed Material
Facts (Doc. 32), Plaintiff's Motions to Strike Affidavits
(Doc. 33; Doc. 43), Plaintiff's Motion to Strike Defendants'
Supplemental Statement of Material Fact (Doc. 51), and
Defendants' Motion to Strike Portions of Declarations (Doc.
47).   For the following reasons, Plaintiff's Motions to
Strike Affidavits (Doc. 33; Doc. 43) are **DISMISSED AS MOOT**,
Plaintiff's Motion to Strike Portions of Defendants'
Statement of Undisputed Material Facts (Doc. 32) is **GRANTED
IN PART** and **DENIED IN PART**, Plaintiff's Motion to Strike
Defendants' Supplemental Statement of Material Facts (Doc.
51) is **GRANTED**, and Defendants' Motion to Strike Portions of

Declarations (Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**.

As explained below, Defendants' Motion for Summary Judgment (Doc. 27) is also **DISMISSED** and Defendants shall have **thirty days** from the date of this order to refile their motion in accordance with the Court's evidentiary rulings. Following service of the new motion, all normal briefing deadlines will apply. Both parties should be aware, however, that the Court will not accept any motion or response that incorporates by reference any factual allegation or argument contained in an earlier filing. Each motion and response should be a stand-alone filing that independently contains all the factual allegations and arguments that the filing party wishes the Court to consider.

## BACKGROUND

In this case, Plaintiff Stephen R. Cribbs claims that Defendants discriminated against him when they terminated his employment. According to Plaintiff, he was yelled and cursed at after he complained to Defendants about age discrimination. (Doc. 11 ¶ 15.) As result, Plaintiff suffered some sort of mental breakdown, which necessitated his hospitalization and prevented him from returning to work. (Id.) During this time, Plaintiff took leave under

the Family Medical Leave Act ("FMLA").  However, Plaintiff contends that, while he was on FMLA leave, Defendants continuously called him at home and requested that he attend work meetings.  (Id. ¶ 16.)  When he returned, Plaintiff was assigned to a different shift, working different days, at a different facility.  (Id. ¶ 17.)  Defendants placed a younger, female employee in Plaintiff's old position.  (Id. ¶ 18.)  Following a string of disciplinary actions, Plaintiff's employment was ultimately terminated.  (Id. ¶¶ 19-23.)  Plaintiff contends that Defendants failed to notify him when his employment was terminated that he was eligible for continued health insurance coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). (Id. ¶¶ 24-33.)

After filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving Notice of Right to Sue, Plaintiff timely filed suit in this Court.  In his amended complaint, Plaintiff brings claims for disparate treatment and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; failure to accommodate and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12300; violation of the FMLA, 2 U.S.C. § 60, 29 U.S.C. §§ 2601, 2611-2619, 2631-2636, 2651-2654; and

violation of COBRA, 29 U.S.C. §§ 1161-1169. Following discovery, Defendants filed a Motion for Summary Judgment. (Doc. 27.)

Along with his response to that motion, Plaintiff also filed two Motions to Strike. (Doc. 32; Doc. 33.) In the first, Plaintiff requests that the Court strike paragraphs 30, 32, 33, 39, and 54 of Defendants' Statement of Undisputed Material Facts. (Doc. 32 at 1.) In the second, Plaintiff requests that the Court strike paragraphs 20 and 34 of Deborah Gould's affidavit. (Doc. 33 at 1.) In support of his requests, Plaintiff argues that these offending paragraphs are simply hearsay and may not be used to support a motion for summary judgment. (Doc. 32 at 1; Doc. 33 at 1-3.)

In response to these motions, Defendants stipulated to striking paragraphs 20 and 34 of the Gould Affidavit (Doc. 39 at 1.) Therefore, that Motion to Strike (Doc. 33) is **DISMISSED AS MOOT**. However, Defendants argue that paragraphs 30, 32, 33, 39, and 54 of their Statement of Facts are supported by admissible evidence contained in the record. (Doc. 41 at 3-10.)

After they stipulated to striking portions of the Gould Affidavit, Defendants filed the affidavit of Elizabeth Walker. (Doc. 40.) Plaintiff quickly moved to strike that

4

affidavit as untimely. (Doc. 43.) In response, Defendants voluntarily withdrew the Walker Affidavit. (Doc. 50.) As a result, that Motion to Strike (Doc. 43) by Plaintiff is also **DISMISSED AS MOOT.**

With their reply to Plaintiff's response to Defendants' Motion for Summary Judgment, Defendants submitted a second statement of material facts in support of their request for summary judgment. (Doc. 49.) Not surprisingly, Plaintiff quickly filed a motion seeking to strike Defendants' supplemental statement of material facts as improper and untimely. (Doc. 51 ¶¶ 4-5.) Defendants did not respond to Plaintiff's motion. Therefore, Plaintiff's motion (Doc. 51) is **GRANTED** and the Court will disregard that filing.[1]

Not to be outdone, Defendants filed their own Motion to Strike, requesting the Court strike several portions of the declarations of Plaintiff, Debra Cribbs, Reginald Pero, and Jeremy Walker. (Doc. 47.) Defendants make the now familiar argument that these statements are either hearsay, opinion testimony, conclusory, or assertions not based on personal knowledge. (Id. at 5-20.) In response, Plaintiff contends that the statements contained in these declarations are

---

[1] To the extent Plaintiff seeks sanctions for this conduct (Doc. 51 ¶ 7), that request is **DENIED.**

5

admissible and properly before the Court.    (Doc. 52 at 2-19.)

## ANALYSIS

### I.   MOTION TO STRIKE STANDARD

Generally, motions to strike are brought pursuant to Federal Rule of Civil Procedure 12(f), which provides that "[u]pon motion made by a party before responding to a pleading . . . the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The federal rules define a pleading as one of the following: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). Affidavits, declarations, and statements of material facts are not pleadings as defined by the Rules of Civil Procedure. However, Rule 56(c)(2) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The advisory committee notes to Rule 56 state that these objections "function[] much as an objection at trial" and "[t]here is no need to make a

separate motion to strike." Id. advisory committee's notes
to 2010 amendments. Therefore, the Court will treat these
motions to strike as evidentiary objections similar to
motions in limine.

II. PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS'
STATEMENT OF MATERIAL FACTS

Paragraph 30 states that

> Plaintiff violated safety rules in 2009 when he
> had given Jeremy Walker his manager's key to turn
> off the inertia switch on his forklift. Walker hit
> another forklift with his forklift and Plaintiff
> allowed Jeremy Walker to turn off the inertia
> alarms with the manager's key, and then cover up
> the damage to the forklifts with spray paint.

(Doc. 29 ¶ 30.) Defendants support this statement with
paragraph 20 of the Gould Affidavit. (Doc. 27, Ex. I.)

Paragraph 32 states that

> In 2009 and early 2010, the NFI HR Manager Deborah
> Gould (F/K/A Deborah Silva) ("Ms. Gould") received
> complaints from associates that Plaintiff was often in
> his office claiming that he had paperwork to do;
> Plaintiff was rarely seen out on the floor supervising
> his shift; Plaintiff would delegate his Shift
> Supervisor paperwork to the lead on his shift, Jeremy
> Walker; that Plaintiff allowed Jeremy Walker to pick
> out the easiest jobs from the allocator and then dole
> out the remainder of the jobs to the associates;
> Plaintiff afforded Jeremy Walker a great deal of power
> and basically allowed him to run the shift; and
> Plaintiff frequently left the DC facility several times
> per night during his shift to go to the nearby Wal-Mart
> and he remained absent away for as much as an hour at a
> time.

(Doc. 29 ¶ 32.)   Defendants support this statement with paragraphs 6, 23, 25, 27, 28, and 30 of the Gould Affidavit. (Doc. 27, Ex. I.)

Paragraph 33 states that "[w]hile working at the DC facility, it was not uncommon for Plaintiff to waste time with co-workers and subordinates talking about non-work-related matters during his shift." (Doc. 29 ¶ 33.) Defendants support this statement with paragraph 19 of the Gould Affidavit (Doc. 27, Ex. I) and testimony from the deposition of Ruth Rector ("Rector Deposition") (Doc. 27, Ex. F).

Paragraph 39 states that a "power outage on Plaintiff's shift caused a back-up in the loading of product, but Plaintiff left at the end of his shift without informing his manager of the issue." (Doc. 29 ¶ 39.) Defendants support this statement with paragraph 35 of the Gould Affidavit, testimony from the deposition of Patrick Byrnes (Doc. 27, Ex. B), and testimony from Plaintiff's deposition (id., Ex. A).

Finally, paragraph 54 states that

> While Plaintiff was on FMLA leave, Ms. Gould stayed late to interact with associates on Plaintiff's shift, and several associates from Plaintiff's shift came into her office to complain about Plaintiff, which complaints included that Plaintiff let Jeremy Walker run the shift, that Jeremy Walker bullied the associates, and that

> Plaintiff sat in his office and did not do anything.

(Doc. 29 ¶ 54.) Defendants support this statement with paragraphs 45 and 46 of the Gould Affidavit. (Doc. 27, Ex. I.) Plaintiff argues that these statements are supported by only inadmissible hearsay and cannot be used by Defendants to support their Motion for Summary Judgment. (Doc. 32 at 3-4.)

With respect to paragraph 30, Defendants stipulated to the withdrawal of paragraph 20 of the Gould affidavit used to support paragraph 30 of the Statement of Fact. (Doc. 41 at 2.) In its place, Defendants offered the Walker Affidavit as support for paragraph 30. (Id.) However, Defendants subsequently withdrew the Walker Affidavit. (Doc. 50), leaving paragraph 30 of their statement of facts without any evidentiary support from the record. Therefore, the Court must **SUSTAIN** Plaintiff's objection to paragraph 30 of Defendants' Statement of Facts because Defendants have failed to support that statement by citing to admissible evidence contained in the record. See Fed. R. Civ. P. 56(c) (requiring asserted facts to be supported by citation to the record).

With respect to paragraph 32, Defendants argue that this statement is not based on inadmissible hearsay

contained in the Gould Affidavit. (Doc. 41 at 8-9.) Defendants reason that while the supporting paragraphs of the Gould Affidavit recount comments made by employees to Ms. Gould concerning Plaintiff's work performance, they are not being offered to prove the truth of that assertion, but rather to explain the basis for Defendants' decision to discipline Plaintiff. (Id.) Generally, a party may not use hearsay to support a motion for summary judgment. See Fed. R. Civ. P. 56(c). However, a statement is not hearsay if offered for a purpose other than to prove the truth of the matter asserted in the statement. Fed. R. Civ. P. 801(c)(2).

After reviewing those portions of the Gould Affidavit used to support paragraph 32 of Defendants' Statement of Fact, the Court concludes that these statement are not being used to prove the truth of the matter asserted. Rather, these statements catalog the various allegations of workplace misconduct Defendants relied on when disciplining Plaintiff. In other words, Defendants may properly use these allegations of misconduct to attempt to explain the legitimacy of their decision to discipline Plaintiff, regardless of whether the allegations are true. Therefore, Plaintiff's objection to paragraph 32 of Defendants' Statement of Facts is **OVERRULED**.

With respect to paragraph 33, Defendants argue that the Gould Affidavit directly supports this statement of fact. (Doc. 41 at 9.)  A quick review of paragraph 19 of the Gould Affidavit shows this to be correct.  Ms. Gould states that "[i]t was not uncommon for Mr. Cribbs to come into my office for an hour or more to discuss work-related matters and waste time talking about non-work-related matters."  (Doc. 27, Ex. I ¶ 19 (emphasis added).)   Therefore, Ms. Gould's statement is based on her personal knowledge of Plaintiff engaging in the alleged activity.  As a result, Plaintiff's objection to paragraph 33 of Defendants' Statement of Facts is **OVERRULED**.

With respect to paragraph 39, Defendants contend Mr. Byrnes appeared at the deposition as their designated corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6).   (Doc. 41 at 5.)   Defendants reason that, as the designated corporate representative, Mr. Byrnes was not required to have personal knowledge of the evidence discussed in his deposition.  (Id. at 5-6.)   Indeed, Rule 30(b)(6) says as much, requiring Mr. Byrnes to "testify about information known or reasonably available to the organization."  As a result, Mr. Byrnes's personal knowledge is irrelevant to his testimony.  He properly testified as to the institutional knowledge held by Defendants with respect

11

to the circumstances surrounding Plaintiff's termination. (Doc. 27, Ex. B 94:15-95:25.) Therefore, Plaintiff's objection to paragraph 39 of Defendants' Statement of Facts is **OVERRRULED**.

With respect to paragraph 54 of Defendants' Statement of Facts, Defendants once again argue that this statement is not supported by hearsay because those portions of Ms. Gould's affidavit upon which Defendants' rely are not being used to prove the truth of the employees' allegations concerning Plaintiff's conduct at work. (Doc. 41 at 10.) Rather, those statements are being offered to explain Defendants' rationale behind disciplining and eventually terminating Plaintiff's employment. As discussed above, the Court agrees with Defendants' characterization and finds that these statements are not being used to prove the truth of the matter asserted, but recount the various allegations of workplace misconduct underlying Defendants' decision to discipline Plaintiff. Therefore, Plaintiff's objection to paragraph 54 of Defendants' Statement of Facts is **OVERRULED**.

III. PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' STATEMENT OF MATERIAL FACTS

A. Declaration of Plaintiff

Defendants object to paragraphs 3, 5, 7, 8, and 14 of Plaintiff's declaration on the grounds that they are either

12

inadmissible hearsay, improper opinion testimony, conclusory, or not based on personal knowledge. (Doc. 47 at 5-9.) Paragraph 3 of Plaintiff's declaration states that "[s]afety is no more important on the night shift than on any other shift" and that "[e]very supervisor, including me, was instructed by Tom Diego to paint any scratches on the forklifts at the end of every shift every day." (Doc. 31, Ex. AA ¶ 3.) Defendants contend that the statement concerning safety is both an improper lay opinion and a conclusory statement unsupported by any factual evidence. (Doc. 47 at 6.) Also, Defendants argue that Plaintiff lacks personal knowledge of Mr. Diego's instructions to every supervisor. (Id.)

While not succinctly stated, Plaintiff's statement concerning safety is admissible because his experience as a shift manager on both the day and night shift renders him capable of comparing the requirements of the two. Quite simply, this statement is a factual observation by Plaintiff concerning the safety requirements in place when he was a shift supervisor. Plaintiff's statement regarding Mr. Diego's instructions to every supervisor is not hearsay to the extent that it explains why Plaintiff allegedly painted over damage to a forklift prior to the end of his shift. Such a statement explains why an individual took a specific

action and is not offered to prove the truth of the matter asserted. However, the statement would be inadmissible to prove that Mr. Diego personally instructed every supervisor to follow this policy. Plaintiff may state that Defendants had a general policy requiring all supervisors to paint over damage at the end of their shifts, but not that Mr. Diego personally instructed every supervisor to do so. Accordingly, Defendants' objection is **SUSTAINED IN PART** and the Court will disregard this small portion of paragraph 3.

With respect to paragraph 5, Plaintiff states that he "was instructed by Tom Diego to paint over any scratches, etc. on the lifts at the ends of every shift as were all supervisors." (Doc. 31, Ex. AA ¶ 5.) Once again, Defendants reason that this statement contains inadmissible hearsay and is unsupported by Plaintiff's personal knowledge. (Doc. 47 at 6.) As this statement is materially the same as that in paragraph 3, Defendants' objection is **SUSTAINED IN PART** and the Court will disregard only the portion concerning Mr. Diego personally instructing every supervisor to paint over forklift damage at the end of their shifts.

With respect to paragraph 7, Plaintiff states that

[a] power outage occurred during the shift. I attempted to contact Mr. Diego, but he did not answer my telephone call (which was not uncommon). . . . I

worked on the power problem with the GP Technician from the Mill and fixed all the problems, so there was no problem to report to Mr. Diego.

(Doc. 31, Ex. AA ¶ 7.)   Defendants contend that this statement directly contradicts Plaintiff's deposition testimony that he did not call Mr. Diego.   (Doc. 47 at 6-7.) In addition, Defendants maintain that Plaintiff's statement concerning the absence of any problem to report is not based on personal knowledge, speculative, conclusory, and an improper lay opinion.   (Id. at 7.)   Plaintiff responds that "the chronology of the testimony reflects [] Plaintiff attempted to call Mr. Diego during his shift about the power outage, but Mr. Diego did not answer his call."   (Doc. 52 at 5.)   According to Plaintiff, the problem was subsequently fixed and there was no longer any reason to notify Mr. Diego.   (Id. at 5-6.)   Finally, Plaintiff argues that his comments concerning the absence of any problem to report is not hearsay and properly admissible.   (Id. at 6.)

In Plaintiff's deposition, he is squarely asked whether he called Mr. Diego:

Q.   And why was [Mr. Diego] mad at you?

A.   Because he felt like I should have called him.

Q.   And did you not call him?

A.   No.

> Q.   I said that in a terrible way.   You didn't call
>      him, did you?
>
> A.   No, ma'am.

(Doc. 27, Ex. AA 23:1-8.)   As indicated by this exchange,
Plaintiff was asked twice if he called Mr. Diego, but stated
both times that he did not.   He even stated again later that
"[t]here was absolutely no reason to call [Mr. Diego]."
(Id. 24:21-22.)   This Court may only disregard Plaintiff's
declaration if it contradicts prior deposition testimony
without providing a valid explanation.   Van T. Junkins &
Assocs. V. U.S. Indus., Inc., 736 F.2d 656, 657-68 (11th
Cir. 1984).   While Plaintiff states in his response that the
deposition testimony means that he never spoke directly to
Mr. Diego, Plaintiff fails to identify any testimony in his
deposition stating that he called, but did not reach, Mr.
Diego.   While Plaintiff now seeks to hedge on his earlier
unequivocal denial by stating that the chronology of events
indicates that he attempted to call Mr. Diego, this
explanation in the face of such a glaring inconsistency is
insufficient to convince the Court that it should consider
this portion of Plaintiff's declaration when assessing
Defendants' Motion for Summary Judgment.   Therefore,
Defendants' objection is **SUSTAINED IN PART** and the Court
will disregard that portion of Plaintiff's declaration.

However, the Court does not agree with Defendants that Plaintiff's statement concerning the lack of any problem to report to Mr. Diego is inadmissible.  Plaintiff's belief that there was no problem to report explains why he declined to contact Mr. Diego.  It is not being offered to prove the lack of any problem, or as an opinion concerning the absence of any problem.  Rather, it simply explains Plaintiff's reasoning behind his decision not to contact Mr. Diego.  As a result, it is not hearsay, is based on Plaintiff's personal knowledge, and admissible.

With respect to paragraph 8, Plaintiff states the he believed Mr. Diego had been seeking to fire Plaintiff because of Plaintiff's age and previous health issues. (Doc. 31, Ex. AA ¶ 8.)  Defendant objects to this statement on the grounds that it is simply Plaintiff's belief and not based on any personal knowledge.  (Doc. 47 at 8.)  However, Plaintiff alleges in his complaint that Defendants unlawfully retaliated against him after he complained of discrimination, which requires him to establish that he subjectively believed he was being discriminated against at the time he began complaining of the discrimination.  See Little v. United Tech., 103 F.3d 956, 959-60 (11th Cir. 1997).  Therefore, this evidence is clearly admissible because it explains Plaintiff's subjective belief that he

was the target of unlawful discrimination. Accordingly, Defendants' objection is **OVERRULED**.

With respect to paragraph 14, Plaintiff states that "Rhonda Butler took over [his] job six days after Plaintiff left under FMLA leave. While I was out on FMLA leave, Ms. Gould and Patrick Byrnes, regional vice president at NFI, repeatedly telephoned and harassed me about my need to come to meetings that were being held." (Doc. 31, Ex. AA ¶ 14.) Defendants object to the portion of the statement concerning Ms. Butler because Plaintiff lacks personal knowledge of that fact. (Doc. 47 at 8.) Also, Defendants object to the remainder of the statement on the grounds that it is hearsay, and Plaintiff's characterization of the conduct as harassment is both conclusory and an improper lay opinion. (Id. at 8-9.)

First, if Plaintiff has knowledge of who replaced him, he is qualified to testify as to that fact. Defendants' only argument on this score is that Plaintiff could not have personal knowledge of this fact because he was on FMLA leave. (Id. at 8.) However, there are a myriad of ways Plaintiff could learn that Ms. Butler replaced him six days after he took FMLA leave. Moreover, Plaintiff's belief that he was replaced so soon by a younger employee is important to the analysis of whether he subjectively believed he was

the target of unlawful discrimination when he first complained of discrimination. Therefore, this statement is clearly admissible and can be used by Plaintiff in opposition to Defendants' Motion for Summary Judgment.

Second, Plaintiff's statement concerning Ms. Gould and Mr. Byrnes calling him while on FMLA leave is admissible. At the very least, this statement is not hearsay because it is an admission by a party opponent. Fed. R. Evid. 801(d)(2). Also, Plaintiff is competent to testify as to whether he felt harassed by these phone calls. In any event, the entirety of paragraph 14 is admissible. Accordingly, Defendants' objection is **OVERRULED**.

With respect to paragraphs 15 and 17, Plaintiff states that "Ms. Gould and Mr. Byrnes kept demanding that I come to the meetings" (Doc. 31, Ex. AA ¶ 15), and that "Ms. Gould advised me that the company wanted me 'out' and explained that the company was tired of paying my medical bills, and wanted to 'get rid' of me" (id. ¶ 17). Defendants contend that these statements are inadmissible hearsay. (Doc. 47 at 9.) However, these statements both show Plaintiff's subjective belief that he was the target of unlawful discrimination and are admissions by a party opponent. Therefore, both statements are admissible and may be used in

19

response to Defendants' Motion for Summary Judgment. Accordingly, Defendants objection is **OVERRULED**.

B. Declaration of Debra Cribbs

Defendants object to paragraphs 3, 7, 9, and 10 of Debra Cribb's declaration. (Id. at 2-11.) With respect to paragraph 3, Mrs. Cribbs states that "Tom Diego [] telephoned our home and spoke very loudly to my husband." (Doc. 31, Ex. BB ¶ 3.) Defendants contend that this statement is inadmissible hearsay. (Doc. 47 at 9.) However, this statement simply relates that Mr. Diego was speaking so loudly that Mrs. Cribbs could hear him speaking. This is a statement based on personal knowledge and not offered as evidence of what Mr. Diego said, only how he said it. Therefore, it is clearly admissible and Defendants' objection is **OVERRULED**.

With respect to paragraph 7, Mrs. Cribbs states that Ms. Gould and Mr. Byrnes repeatedly telephoned Plaintiff while he was on FMLA leave. (Doc. 31, Ex. BB ¶ 7.) Defendants argue that this is inadmissible hearsay. (Doc. 47 at 10.) However, the statement is not hearsay because it merely documents Mrs. Cribbs's personal observation that Ms. Gould and Mr. Byrnes were calling Plaintiff while he was on FMLA leave. Accordingly, Defendants objection is **OVERRULED**.

With respect to paragraphs 9 and 10, Mrs. Cribbs states that she was a "former Human Resource Manager at [the predecessor corporation to Defendant NFI]" (Doc. 31, Ex. BB ¶ 9) and "[i]f an employee complained about unfair treatment related to age or health issues, it was company policy to document it in writing" (id. ¶ 10). Defendants maintain that these statements are inadmissible because Mrs. Cribbs's past experience is irrelevant to the present lawsuit and her testimony is an inappropriate opinion not based on any personal knowledge of the facts in this case. (Doc. 47 at 10.) In response, Plaintiff contends that Mrs. Cribbs testimony is admissible because she has personal knowledge concerning Defendants' human resources procedures based on her past employment with the company that preceded NFI.

On this score, Defendants are correct. Mrs. Cribbs is not in a position to testify concerning what procedures were in place at the time the alleged unlawful discrimination took place. Quite simply, she lacks any personal knowledge of Defendants' internal procedures regarding discrimination complaints as they related to Plaintiff, rendering this

testimony inadmissible.  Accordingly, Defendants' objection is **SUSTAINED** and the Court will disregard that statement.[2]

## C. Declaration of Reginald Pero

Defendants object to paragraphs 6, 7, 8, 9, 10, 11, and 16 of Reginald Pero's declaration.  With respect to paragraph 6, Mr. Pero states that "Patrick Byrnes was constantly asking me to give Mr. Cribbs disciplinary write-ups.  As far as I knew, he did not deserve these write-ups for performance or any other reasons."  (Doc. 31, Ex. CC ¶ 6.)  Defendants object to the first portion of that statement on the grounds that it is inadmissible hearsay, and the second portion on the grounds that it is conclusory and not based on Mr. Pero's personal knowledge.  (Doc. 47 at 11-12.)

The portion of the statement regarding Mr. Byrnes requesting Mr. Pero discipline Plaintiff is clearly admissible because it is not being offered to prove the truth of the matter asserted.  Rather, this statement explains why Mr. Pero disciplined Plaintiff for his work performance.  Therefore, it is not hearsay and is admissible.  As to the second portion of the statement, Mr. Pero is qualified to testify as to his knowledge of whether

---

[2]  In his response, Plaintiff withdrew Mrs. Cribbs's phone records as an exhibit.  (Doc. 51 at 11 n.1.)  Accordingly, the Court will also disregard this exhibit.

any other manager received disciplinary write-ups for similar conduct. While Mr. Pero's statement may lack credibility due to his inability to monitor all managers across all shifts, his statement that he did not know of any other managers who were disciplined for similar conduct is well within the realm of his personal knowledge. Accordingly, Defendants' objection to this statement is **OVERRULED**.

With respect to paragraph 7, Mr. Pero states that Mr. Byrnes told him "to do everything you can documenting [Mr. Cribbs] so we can get him out of here." (Doc. 31, Ex. CC ¶ 7.) In addition, Mr. Pero relates that he "was asked to document, document, document Mr. Cribbs' performance and [] was not asked to do this with other shift supervisors." (Id.) Defendants object to these statements on the grounds that they are inadmissible hearsay. However, both statements are clearly admissible under Rule 801(d)(2) as admissions by a party opponent. Moreover, the first portion is not hearsay because it simply explains why Mr. Pero documented Mr. Cribbs's alleged poor work performance. In any event, the statements are admissible and can be used by Plaintiff is responding to Defendants' Motion for Summary Judgment. Accordingly, Defendants' objection is **OVERRULED**.

With respect to paragraph 8, Mr. Pero states that "[t]he write-up that I gave Mr. Cribbs for sending an employee home was not justified. As a shift manager, Mr. Cribbs was in control of the shift and was allowed to send people home." (Doc. 31, Ex. CC ¶ 8.) Defendants contend that this statement contradicts Mr. Pero's prior deposition testimony where he stated that managers must first contact him prior to sending an employee home. (Doc. 47 at 12-13.) According to Defendants, these statements are in direct conflict and the Court should disregard the statement in Mr. Pero's declaration. (Id.)

The Court, however, does not agree that these statements directly contradict each other. Mr. Pero also stated in paragraph 8 that "[o]ther managers did the same thing but neither they nor any other manager to my knowledge was written-up for this sort of conduct." (Doc. 31, Ex. CC ¶ 8.) Therefore, while Mr. Pero stated in his deposition that Defendants' policy was for shift supervisors to provide notice that they were sending an employee home, his declaration states that shift supervisors generally did not receive any discipline for violations of this policy. Read in its entirety, paragraph 8 does not directly contract Mr. Pero's earlier deposition testimony. Accordingly, Defendants' objection is **OVERRULED**.

With respect to paragraph 9, Mr. Pero states the "[t]he write up by me for Mr. Cribbs taking comp time was also unjustified. . . . Thomas Ruarks leaves every Sunday morning and Chris Williams leave [sic] early almost every morning without being written up or given any other discipline." (Doc. 31, Ex. CC ¶ 9.)  Defendants argue that the first portion of Mr. Pero's statement contradicts his earlier deposition testimony, while the second portion is not based on Mr. Pero's personal knowledge.  (Doc. 47 at 13-15.)

In his deposition, Mr. Pero stated that the common procedure for taking comp time was for the shift supervisor to notify their manager in advance.  (Id. at 14.)  As discussed above, however, this does not render the two statements contradictory.  Again, Mr. Pero's declaration only states that, to the best of his knowledge, no other supervisors received discipline for similar conduct, not that Plaintiff failed to follow the appropriate procedures. Also, the statement is neither conclusory nor an improper opinion.  It is based on Mr. Pero's personal experience while serving as Plaintiff's manager.  As to the second portion of the statement, Mr. Pero may testify as to whether he knew of any other employees who failed to follow the appropriate comp time policy, but were not disciplined by Defendants.  While Mr. Pero may have overstepped his

personal knowledge by speaking to Defendants' employment practices subsequent to the termination of Mr. Pero's employment, the Court need not ignore the entirety of his deposition, but will limit its scope to the time when Mr. Pero was employed by Defendants.[3]   Subject to this limitation, Defendants objection is **OVERRULED**.

With respect to paragraph 10, Mr. Pero states that "[a] write-up about pallets not run through the woodpecker and being blown down was not justified because Mr. Cribbs ran into issues with the customer's systems that were beyond his control." (Doc. 31, Ex. CC ¶ 10.) Defendants contend that this statement contradicts Mr. Pero's prior deposition testimony and should be disregarded. (Doc. 47 at 15.) Similar to the discussion above, the Court also finds that this statement by Mr. Pero does not contradict his earlier deposition testimony. Accordingly, Defendants' objection to paragraph 10 is **OVERRULED**.

With respect to paragraph 11, Mr. Pero states that "I was told that the purpose of [the 45-day improvement plan] was to give it to Mr. Cribbs, but I was told that we could not give it to just one person, so we had to give it to all the managers." (Doc. 31, Ex. CC ¶ 11.) Defendants maintain

---

[3] Indeed, Plaintiff recognized as much and agreed to strike any reference by Mr. Pero to incidents that occurred after Mr. Pero left Defendants' employ. (Doc. 52 at 14 n.2.)

that this statement is inadmissible hearsay. (Doc. 47 at 15.) However, this statement is clearly admissible as an admission by a party opponent. Fed. R. Evid. 801(d)(2). Accordingly, Defendants' objection is **OVERRULED**.

With respect to paragraph 16, Mr. Pero states that "Mr. Cribbs was a competent manager and should not have been terminated. His performance was comparable to the performance of any other manager." (Doc. 31, Ex. CC ¶ 16.) Defendants object to the first portion of that statement on the grounds that it is only Mr. Pero's personal belief, is improper opinion testimony, and is conclusory. (Doc. 47 at 16.) Defendants object to the second portion on the grounds that Mr. Pero lacks personal knowledge of Mr. Cribbs's performance in relation to other managers. (Id.)

The first portion of Mr. Pero's statement is admissible. As Plaintiff's supervisor, Mr. Pero is uniquely qualified to testify as to whether he thought Mr. Cribbs's work performance warranted his termination. With respect to the second portion, it is admissible to the extent Mr. Pero has personal knowledge of the work performance of employees that held positions comparable to Plaintiff's. That is, Mr. Pero's experience working for Defendants gives him personal knowledge of Plaintiff's work performance as compared to similarly situated co-workers whom Mr. Pero supervised while

27

employed by Defendants. Mr. Pero would lack sufficient knowledge to base any comparison between Plaintiff and employees whom Mr. Pero did not supervise. Subject to this limitation, Defendants' objection to this paragraph is **OVERRULED**.

D. Declaration of Jeremy Walker

Defendants object to paragraphs 4, 6, 7, 8, 10, 11, and 12 of Jeremy Walker's declaration. (Doc. 47 at 17-20.) With respect to paragraph 4, Mr. Walker states the following:

> When Mr. Cribbs would work the night shift and then have to come in for managers' meetings the next day, Mr. Cribbs was allowed to take comp time to make up for having to come in during the day. He would take comp time the following night shift, for instance, and ask me or the Allocator, Ruth Rector, to take over for him. This sort of arrangement happened once a month or so, and it was just understood by Mr. Cribbs' superiors that this would happen. On several such occasions, I would hear Mr. Cribbs' direct supervisor, Tom Diego, tell Mr. Cribbs that 'once everything gets started, leave these other guys in charge and you go home and get some rest.' Otherwise, Mr. Cribbs would be working all night without getting any sleep because he would have to come to the Distribution Center during the day time.

(Doc. 31, Ex. DD ¶ 4.) Defendants argue that this statement contains inadmissible hearsay, is mere speculation, and contains improper opinion testimony. (Doc. 47 at 17-18.) However, Mr. Diego's alleged statement is clearly one against Defendants' interests and admissible under Rule

801(d)(2). Furthermore, Mr. Walker may testify as to his understanding of Mr. Cribbs's reasons for routinely taking comp time following manager's meetings. Indeed, Mr. Walker states that he was often required to cover Mr. Cribbs's duties when he took comp time. Finally, Mr. Walker can easily determine whether Plaintiff was at work for such an extended period of time that he was unable to go home and rest. Accordingly, Defendants' objection to paragraph 4 is **OVERRULED**.

With respect to paragraph 6, Mr. Walker states that "it was clear to me that Mr. Cribbs' supervisor, Tom Diego, was trying to lower the [Labor Management System] percentage for Mr. Cribbs' shift." (Doc. 31, Ex. DD ¶ 6.) The Labor Management System ("LMS") quantified productivity, providing a higher percentage for more efficient shifts. (Id.) Defendants contend that this statement is an improper opinion, rank conjecture, and unsupported. (Doc. 47 at 18.) However, the remainder of Mr. Walker's declaration supports his statement by explaining specifically how Mr. Diego lowered Plaintiff's LMS percentage. (Doc. 31, Ex. DD ¶ 6.) Therefore, Mr. Walker's statement concerning his opinion of Mr. Diego's action is adequately supported by evidence in the record. Accordingly, paragraph 6 is admissible and Defendants' objection is **OVERRULED**.

With respect to paragraph 7, Mr. Walker states that
"[a]nother way LMS percentage was reduced for our shift was
by requiring the person filling forklift gas tanks to log on
to the LMS an hour and a half before the shift even began.
This downtime was attributed to our shift and reduced our
LMS percentage." (Doc. 31, Ex. DD ¶ 7.) Defendants again
object to this statement on the grounds that it is
conclusory, conjecture, and speculation. (Doc. 47 at 18-
19.) As discussed above, however, Mr. Walker has personal
knowledge of the requirements Mr. Diego placed on
Plaintiff's shift and how these requirements reduced the LMS
percentage. Accordingly, Defendants objection is **OVERRULED**.

With respect to paragraph 10, Mr. Walker states that
"Tom Diego, was responsible for making these decisions about
logging onto the LMS and it was clear to me that Mr. Diego
was trying to keep our shift's percentage low. It was clear
to me that Tom Diego was targeting Mr. Cribbs and trying to
reduce the percentages and productivity of Mr. Cribbs'—and
my—shift." (Doc. 31, Ex. DD ¶ 10.) Defendants object to
this statement on the grounds that it is conclusory and not
based on Mr. Walker's personal knowledge. (Doc. 47 at 19.)
The first portion of this statement is admissible because
Mr. Walker possesses personal knowledge concerning the LMS
and what decisions Mr. Diego made that served to reduce the

LMS percentage of his shift. However, Mr. Walker's statement that Mr. Diego was specifically targeting Plaintiff is inadmissible. This statement amounts to little more than Mr. Walker's subjective belief as to Mr. Diego's intentions and, without more, is inadmissible. Therefore, Defendants' objection is **GRANTED IN PART** and **DENIED IN PART**.

With respect to paragraph 11, Mr. Walker states that "[a]t one time, employees were cheating on the LMS for the purpose of getting their percentages higher. Mr. Cribbs had nothing to do with this and he had no knowledge that I told other employees how to do this." (Doc. 31, Ex. DD ¶ 11.) Defendants object to this statement on the grounds that Mr. Walker has no personal knowledge of his fellow employee's actions and he fails to explain how he could have observed or perceived those facts. (Doc. 47 at 19.) As to the first portion of Mr. Walker's statement, there is little doubt that, given his experience with his fellow co-workers, Mr. Walker possesses personal knowledge sufficient to form a belief as to whether they were cheating the LMS. However, Mr. Walker is unqualified to testify that Plaintiff had no knowledge that Mr. Walker told other employees how to cheat the system. Accordingly, Defendants' objection is **SUSTAINED IN PART** and the Court will disregard this latter portion of Mr. Walker's declaration.

With respect to paragraph 12, Mr. Walker states the following:

> A day or two after Mr. Cribbs went to the hospital, Rhonda Butler was announced as our new weekday nights shift supervisor, taking Mr. Cribbs' position. I was in shift meeting and after that, I was pulled in the General Manager's office w/ Deborah Gould, Tom Diego, and Rhonda Butler and told that I either went along with Rhonda Butler being in charge or I didn't, and that they wanted me to go out there and increase my production. At least twice a week after this initial meeting, Mr. Diego would pull me into his office and tell me something very similar. On each of these occasions, I felt my job was being threatened, and I told Deborah Gould on at least one occasion that I thought I was being harassed.

(Doc. 31, Ex. DD ¶ 12.) Defendants object to this statement on the grounds that it is inadmissible hearsay. (Doc. 47 at 20.) Also, Defendants object to Mr. Walker's statement that he informed Ms. Gould of his belief that he was being harassed as containing only opinions and beliefs. (Id.) First, the statements by Ms. Gould and Mr. Diego are admissible as admissions by a party opponent. Fed. R. Evid. 801(d)(2). However, Mr. Walker's statement concerning his belief that his job was being threatened and that he informed Ms. Gould he felt harassed is inadmissible. This statement is not hearsay, but it is completely irrelevant to this case. Quite simply, that statement has no bearing on whether Plaintiff was subject to unlawful discrimination by Defendants, but only serves to portray Defendants in a bad

light by suggesting that Mr. Walker was subject to unpleasant working conditions. Accordingly, Defendants' objection to this paragraph is **GRANTED IN PART** and **DENIED IN PART**.

IV. <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

As evidenced above, the parties have to some degree successfully attacked the factual allegations upon which their respective opponent argued and briefed Defendants' Motion for Summary Judgment. The now fractured record leaves this Court with the daunting task of attempting to piece together the fragments, determine the facts in the light most favorable to Plaintiff, and apply those facts to the parties' arguments. Rather than pursue this treacherous course, the Court finds it prudent to permit the parties to rebrief those issues in light of the evidentiary rulings contained in this order.

Therefore, Defendant shall have **thirty days** from the date of this order to refile their Motion for Summary Judgment in accordance with the Court's evidentiary rulings. Following service of the new motion, all normal briefing deadlines will apply. Both parties should be aware, however, that the Court will not accept any motion or response that incorporates by reference any factual allegation or argument contained in an earlier filing. Each

33

motion and response should be a stand-alone filing that independently contains all the factual allegations and arguments that the filing party wishes the Court to consider.

CONCLUSION

For the foregoing reasons, Plaintiff's Motions to Strike Affidavits (Doc. 33; Doc. 43) are **DISMISSED AS MOOT**, Plaintiff's Motion to Strike Portions of Defendants' Statement of Undisputed Material Facts (Doc. 32) is **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's Motion to Strike Defendants' Supplemental Statement of Material Facts (Doc. 51) is **GRANTED**, and Defendants' Motion to Strike Portions of Declarations (Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**. In addition, Defendants' Motion for Summary Judgment (Doc. 27) is also **DISMISSED** and Defendants shall have **thirty days** from the date of this order to refile their motion in accordance with the Court's evidentiary rulings.

SO ORDERED this *25th* day of September 2013.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA