**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA** PM 5:13
**SAVANNAH DIVISION**

CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| STEPHEN R. CRIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV411-263 |
| | ) | |
| NFI NETWORK LOGISTIC | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## O R D E R

Before the Court is Defendant NFI Network Logistic Solutions, LLC's Motion for Summary Judgment.  (Doc. 56.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's request for summary judgment with respect to Plaintiff's claim of discrimination under the Americans with Disabilities Act, ("ADA") and claims of retaliation under the ADA and the Age Discrimination in Employment Act of 1967 ("ADEA") is **GRANTED**.  However, Defendant's request for summary judgment with respect to Plaintiff's claims of discrimination under the ADEA, and for violations of the Family Medical Leave Act ("FMLA") and Consolidated Omnibus Budget Reconciliation Act ("COBRA") is **DENIED**.

## BACKGROUND

In this case, Plaintiff Stephen R. Cribbs claims that Defendant discriminated against him when it terminated his employment.[1] Plaintiff began working for Defendant on March 9, 2000 at one of its two warehousing facilities, which provide warehousing and shipping services solely to Georgia Pacific. (Doc. 62 at 2.) Initially, Defendant was a Shift Manager, eventually being promoted to Shift Supervisor. (Id.)

Sometime in February of 2010, Plaintiff arrived at work to find the facility behind schedule due to an earlier power outage. (Id. at 3.) Plaintiff rectified all the problems he encountered. (Id.) However, Plaintiff's manager—Mr. Tom Diego—telephoned Plaintiff and cursed at him because Plaintiff's shift had been behind on load times. (Id.) According to Plaintiff, who was fifty-two at the time, Mr. Diego wanted to fire Plaintiff because of his age and ongoing health issues. (Id.)

After that conversation, Plaintiff telephoned Defendant's Human Resources Manager—Ms. Deborah Gould. (Id.) However, Plaintiff suffered an anxiety attack while

---

[1] For the purposes of ruling on Defendant's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

on the phone with Ms. Gould. (Id.) Plaintiff's wife informed Ms. Gould of the situation and took Plaintiff to the hospital, where he was diagnosed with anxiety and associated cardiac-related symptoms. (Id. at 3-4.) Doctors informed Plaintiff that he should not return to work immediately and prescribed him medications. (Id. at 4.)

The following day, Plaintiff requested leave from his employment under the FMLA. (Id.) Defendant granted Plaintiff's request. (Id.) However, Plaintiff alleges that Ms. Gould and Mr. Patrick Byrnes—the regional vice-president—repeatedly telephoned Plaintiff and informed him that his attendance was required at various meetings. (Id.) Following one of these requests, Plaintiff informed Ms. Gould that he felt Mr. Diego and upper management were treating him unfairly. (Id.) According to Plaintiff, Ms. Gould informed him that the company wanted to "get rid of him" because it was tired of paying his medical bills. (Id. at 4-5.)

While Plaintiff was on FMLA leave, Defendant assigned Plaintiff's shift to Ms. Rhonda Butler—a substantially younger employee. (Id. at 5.) While on that shift, Ms. Butler informed management that several employees complained of low morale. (Id.) Mr. Byrnes allegedly

3

investigated the complaints and subsequently decided to transfer Plaintiff to their second warehouse, located directly across the street. (Id. at 5-6.) While Plaintiff's title, salary, and responsibilities did not change, his new position required him to work weekend nights. (Id.) Previously, Plaintiff worked only week nights. (Id. at 5.) According to Plaintiff, Mr. Byrnes's decision to transfer him was based on Mr. Byrnes's desire for Plaintiff to fail in the new position. (Id. at 6.) As part of this ongoing plan to terminate his employment, Mr. Byrnes instructed Mr. Reggie Pero—Plaintiff's immediate supervisor at the second warehouse—to find ways to "write up" Plaintiff for workplace violations. (Id. at 7.) Mr. Pero claims he was instructed to focus on citing Plaintiff for workplace violations, being sure to include detailed documentation, so that Defendant could terminate his employment. (Id.)

In October of 2010, Plaintiff met with Ms. Gould concerning what he perceived to be his unfair treatment by management, his need for additional leave due to his health, and his desire to return to his previous shift. (Id.) Unknown to Ms. Gould, Plaintiff surreptitiously recorded that meeting. (Id.) According to Plaintiff, he recorded the meeting because Ms. Gould failed to document

his previous complaints and because he wanted to ensure that management did not misrepresent what transpired. (Id. at 7-8.) Upon Mr. Byrnes learning that Plaintiff recorded the meeting, Plaintiff's employment was terminated. (Id. at 8.)

Plaintiff alleges that following his termination he repeatedly requested Defendant send him the forms required to elect a continuation of his health insurance under COBRA. (Id.) However, Defendant failed to provide the forms, causing Plaintiff to incur uninsured medical expenses and forego other recommended medical treatment. (Id.) Plaintiff reacquired health insurance when he found new employment in March of 2011. (Id.) Also, Plaintiff later received the COBRA forms approximately eighteen months after his termination. (Id.)

For its part, Defendant contends that Plaintiff's work performance was poor as early at 2009, prompting complaints from his employees and Defendant's only customer—Georgia Pacific. (Doc. 58 at 3.) While Plaintiff was on FMLA leave, Defendant investigated the complaints and performance issues, ultimately deciding to transfer Plaintiff to their second warehouse at the same position and salary. (Id.) However, Plaintiff continued to violate Defendant's policies and perform poorly, prompting

Defendant to take progressive disciplinary actions. (Id. at 3-4.) During one disciplinary meeting, Plaintiff secretly recorded the conversation. (Id. at 4.) Defendant considered this to be a breach of trust and a violation of its Code of Conduct and terminated Defendant's employment based on these violations. (Id.).

After filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving Notice of Right to Sue, Plaintiff filed suit in this Court. In his amended complaint, Plaintiff brings claims for disparate treatment and retaliation under the ADEA, 29 U.S.C. §§ 621-634; failure to accommodate and retaliation under the ADA, 42 U.S.C. §§ 12101-12300; violation of the FMLA, 2 U.S.C. § 60, 29 U.S.C. §§ 2601, 2611-2619, 2631-2636, 2651-2654; and violation of COBRA, 29 U.S.C. §§ 1161-1169.

In its renewed[2] Motion for Summary Judgment, Defendant argues that Plaintiff's ADEA and ADA discrimination claims fail because his transfer and termination were based on legitimate, non-discriminatory reasons—his poor work performance and misconduct. (Doc. 58 at 6-13.) In addition, Defendant contends that Plaintiff's ADA claim

---

[2] After previously resolving the parties' five Motions to Strike, the Court dismissed Defendant's first Motion for Summary Judgment and ordered rebriefing. (Doc. 55.)

6

fails because he was not disabled, was not regarded by Defendant as disabled, never requested any reasonable accommodation, and was not terminated based on any actual or perceived disability. (Id. at 13-15.) With respect to Plaintiff's ADEA and ADA retaliation claims, Defendant maintains both that Plaintiff did not engage in a statutorily protected activity and that Plaintiff's poor work performance was the impetus for his termination. (Id. at 15-17.) Defendant also claims that its actions were not in violation of the FMLA. (Id. at 18-22.) Finally, Defendant reasons that it did not violate COBRA because it offered Plaintiff retroactive health insurance coverage. (Id. at 23-25.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. <u>Matsushita</u>, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See, e.g.</u>, <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. PLAINTIFF'S ADA DISCRIMINATION CLAIM

Defendant argues that it is entitled to summary judgment on Plaintiff's ADA discrimination claim because Plaintiff failed to offer evidence that could establish either that he was disabled or that Defendant regarded him as disabled. (Doc. 58 at 13-14.) In addition, Defendant contends that Plaintiff identifies no evidence showing that he requested a reasonable accommodation for his disability. (<u>Id.</u> at 14-15.) Finally, Defendant maintains that

Plaintiff is unable to establish that any disability was a determining factor in his termination. (Id. at 6-9, 15.)

In response, Plaintiff claims that there is evidence in the record both that he suffered from a disability and that Defendant regarded him as disabled. (Doc. 62 at 16-18.) In addition, Plaintiff states that his request to return to his original shift qualifies as a reasonable accommodation under the ADA and that any failure to request an accommodation is not fatal to his claim. (Id. at 17-18.) Finally, Plaintiff contends there is both direct evidence of discrimination (id. at 18-19), and circumstantial evidence that establishes Defendant's stated non-discriminatory reasons for his termination as merely pretext for disability discrimination (id. at 13-15, 19-20).

The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112. A plaintiff may use either direct or circumstantial evidence to prove a claim for disability discrimination. Curry v. Sec'y, Dep't of Veteran Affairs, 518 F. App'x 957, 963 (11th Cir. 2013). According to the Eleventh Circuit Court of Appeals, direct evidence is that which tends to show that a defendant possessed a

"discriminatory or retaliatory attitude" in relation to the adverse employment action that forms the basis of the plaintiff's claim. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999)). In the ADA context, direct evidence of age discrimination embraces only those actions and remarks that leave little doubt as to an employer's intent to discriminate on the basis of an employee's actual or perceived disability. See Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).[3] The paradigmatic example of direct evidence would be a memorandum from company management directing the termination of an employee because he is disabled. See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1190 (11th Cir. 1997). However, the evidence need not be that explicit to be considered direct. Id. Generally, the Eleventh Circuit finds direct evidence where " 'actions or statements of an employer reflect[] a discriminatory or retaliatory attitude correlating to the discrimination or

---

[3] While Van Voorhis deals with age discrimination under the ADEA, the law developed in both the ADA and ADEA is applied interchangeably. Bass v. Lockheed Martin Corp., 287 F. App'x 808, 810 (11th Cir. 2008) (citing Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001)).

11

retaliation complained of by the employee.' " Id. (quoting Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990)).

In this case, Plaintiff argues Ms. Gould's statement that Defendant "wanted him 'out' because it was tired of paying his medical bills" is direct evidence of disability discrimination. (Doc. 62 at 18.) However, this statement is insufficient to qualify as direct evidence. Tying Ms. Gould's statement to any discriminatory intent requires an inference that the medical bills are due to either an actual or perceived disability, taking it out of the category of direct evidence. Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) ("Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption.' " (quoting Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998))). In addition, Ms. Gould's statement makes no reference to Plaintiff's ability to perform job, or otherwise suggest that the medical bills were the result of a disability. It is entirely possible for an individual to generate high medical costs, but yet not qualify as disabled under the ADA. A statement expressing a desire to terminate Plaintiff's employment because he was "too sick to work" is the type of evidence that would leave little

doubt as to Defendant's intent to discriminate on the basis of any actual or perceived disability suffered by Plaintiff. Comparatively, the statement relied upon by Plaintiff in this case simply requires too much inference for the Court to consider it as direct evidence of discrimination.

In the absence of direct evidence, Plaintiff must establish a prima facie case of disability discrimination utilizing the familiar burden shifting framework found in McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973). Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1375 (11th Cir. 1996). Under this test, Plaintiff must first make out a prima facie case by showing that he (1) has a disability, either actual or perceived; (2) is a qualified individual under the ADA; and (3) was subjected to unlawful discrimination because of the actual or perceived disability. David v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000). Should Plaintiff establish a prima facie case, Defendant then bears the burden of producing a legitimate, non-discriminatory reason for the adverse employment action. Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004). If the defendant meets this burden, the Plaintiff must then point to evidence that the

proffered reason is merely pretextual. <u>Crawford v.</u>
<u>Carroll</u>, 529 F.3d 961, 976 (11th Cir. 2008).

Dispositive to this claim is the first prong: whether
Plaintiff has identified any evidence in the record
establishing that he was actually disabled or perceived by
Defendant as disabled. As his disability, Plaintiff points
to his anxiety, which he argues "qualifies as a mental or
physical impairment that substantially limits one or more
major life activities." (Doc. 62 at 16-17.) Plaintiff
supports this assertion by referencing his own deposition.
(<u>Id.</u> at 17 (<u>citing</u> Doc. 27, Attach. 1 pp. 28:19-24, 29:4-
11, 30:2-8, 31:22-24, 32:15-21).) However, these self-
serving statements fall far short of establishing that
Plaintiff was disabled. Plaintiff has failed to identify
any specific major life activity that is limited by his
anxiety. Presumably, Plaintiff believes that his anxiety
limits his ability to work. <u>See</u> 29 C.F.R. § 1630.2(i)
(listing working as a major life activity). If this were
the case, Plaintiff would be required to show that his
condition significantly restricts his " 'ability to perform
either a class of jobs or a broad range of jobs in various
classes as compared to the average person having comparable
training skills and abilities.' " <u>Stewart v. Happy</u>
<u>Herman's Cheshire Bridge</u>, 117 F.3d 1278, 1285 (11th Cir.

1997) (quoting Pritchard v. S. Co. Servs., 92 F.3d 1130, 1133 (11th Cir. 1996)). Yet, Plaintiff has failed to identify any evidence in the record that would establish his anxiety led to such a restriction of his ability to perform any job. That Plaintiff required a leave of absence from his position is insufficient under the ADA to establish that he was disabled. Other than Plaintiff's self-serving statement that he was disabled, there is no evidence in the record that would permit a reasonable jury to conclude that Plaintiff suffered from a disability.[4]

Attempting to sidestep these omissions, Plaintiff also contends that Defendant regarded him as disabled. (Doc. 62 at 17-18.) An individual is regarded as being disabled where his employer holds the mistaken belief that the individual suffers from an impairment that substantially limits his ability to work. See 42 U.S.C. § 12102(2)(C); Standard, 161 F.3d at 1328. To support his argument, Plaintiff points to evidence in the record purporting to show that "NFI management moved Mr. Cribbs to the Mill

---

[4] Plaintiff also relies on a Disability Certificate from his cardiologist stating that he was disabled and unable to work from March 3 to March 8, 2010. (Doc. 60, Ex. OO.) This note, which represents the closest thing to a medical opinion in this case, is not evidence that Plaintiff was suffering from a disability under the ADA. Rather, it is a simple doctor's note excusing Plaintiff from work for five days and clearing him for regular duty beginning on March 9, 2010.

location 'because he had a heart attack,' and with the hopes that Plaintiff would fail in his new role, and that he would quit." (Doc. 62 at 17.) In addition, Plaintiff again states Ms. Gould informed him that Defendant was tired of paying his medical bills and wanted to get rid of him, and that Mr. Byrnes believed the new position would be easier for Plaintiff. (Id. at 17-18.)

However, this evidence falls short of establishing that Defendant regarded Plaintiff as disabled. Plaintiff's allegation Defendant moved him to an easier position in the second warehouse because he had a heart attack belies the notion that Defendant believed Plaintiff suffered from an impairment that limited his ability to work. In addition, Defendant's alleged hope that Plaintiff would fail in his new role exhibits at most a desire for Plaintiff to cease working for Defendant, but does not indicate Defendant viewed Plaintiff as disabled to such a point that he was unable to perform his duties. Finally, the statement concerning medical bills once again fails to assist Plaintiff's argument. As noted above, an individual's medical bills alone are not indicative of either a disability or a limitation on his ability to work. As Plaintiff has failed to identify any evidence in the record that would lead a reasonable factfinder to conclude that he

was either disabled or regarded as disabled, Defendant is entitled to summary judgment on this claim.

III. PLAINTIFF'S ADEA DISCRIMINATION CLAIM

Defendant argues that it is entitled to summary judgment on Plaintiff's ADEA discrimination claim because Plaintiff failed to show that age was a determining factor in his termination. (Doc. 58 at 6-13.) In support of this argument, Defendant contends that Plaintiff's history of performance issues is a legitimate, non-discriminatory reason for Plaintiff's termination. (Id.) In response, Plaintiff maintains that his purported poor work performance was merely pretext for Defendant terminating him based on his age. (Doc. 62 at 14-15.)

The ADEA prohibits employers from discharging an employee who is at least forty years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). Where, as here, there is no direct evidence of discrimination, the Eleventh Circuit has applied the burden-shifting McDonnell Douglas framework to evaluate claims under the ADEA. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000); see also Mitchell v. City of Lafayette, 2013 WL 310063, at *1 (11th Cir. Jan. 28, 2013) (unpublished).

Under this burden-shifting scheme, Plaintiff must establish a prima facie case for age discrimination under

the ADEA by demonstrating that: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a younger individual. Chapman, 229 F.3d at 1024. Once Plaintiff does so, there is a rebuttable presumption of discrimination. The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for its action. Watkins v. Sverdrup Tech., Inc., 153 F.3d 1308, 1314 (11th Cir. 1998). This burden on the employer is "exceedingly light" and one of production, not proof. Perryman v. Johnson Prods. Co., 135 F.3d 1428, 1432 (11th Cir. 1998). Should the employer produce a legitimate non-discriminatory reason, the McDonnell Douglas presumption drops from the case and the plaintiff has an opportunity to discredit the defendant's proffered explanation. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). To survive summary judgment, a plaintiff must produce evidence for a "reasonable factfinder to conclude that each of the employer's proffered non-discriminatory reasons is pretextual." Chapman, 229 F.3d at 1037.

So long as the proffered reason is "one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot

succeed by simply quarreling with the wisdom of that reason." Id. at 1030. Additionally, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.' " Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Courts must be mindful that they do not sit as "super-personnel department[s] that reexamine[] [business] decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's management, the ADEA does not interfere. Rather, our inquiry is whether the employer gave an honest explanation of its behavior." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quotations omitted). Indeed, an employer may terminate an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984).

In this case, Plaintiff has established a prima facie case of age discrimination. As their legitimate, non-discriminatory reason, Defendant points to Plaintiff's long

history of workplace problems and misconduct.[5]   (Doc. 58 at
6-9, 11.)   In response, Plaintiff contends his supervisor's
testimony that management instructed him to focus on citing
Plaintiff for workplace violations is evidence of pretext.
(Doc. 62 at 14.)   Specifically, the supervisor—Mr. Pero—
testified at his deposition that he cited Plaintiff for
wrongdoing that was also being committed by other managers.
(Doc. 60, Ex. DD 24:5-9.)   According to Mr. Pero, he
singled out Plaintiff for discipline because Mr. Byrnes
told him "to make a concentrated effort to write up
[Plaintiff] at every cost to get [Plaintiff] out of there.
And make sure [he was] detailed in [his] documentation."
(Id. 24:12-15.)

---

[5]   Defendant also argues that Plaintiff's workplace
misconduct rendered him unqualified for his position as
Shift Supervisor.   (Doc. 58 at 10.)   However, Defendant
fails to provide any elaboration for its position.   It
seems odd in this case that Plaintiff was promoted to and
held a position for a number of years while at the same
time was unqualified for that very same position.
Importantly, Defendant has not identified any specific
qualifications found wanting in Plaintiff that would render
him unqualified.   While Plaintiff's alleged poor
performance may be a legitimate, non-discriminatory reason
for terminating his employment, it does not somehow
unilaterally render him unqualified for a job he previously
held for a significant length of time.   Accordingly, the
Court will not address this argument with respect to
Plaintiff establishing a prima facie case of age
discrimination, but treat it as a legitimate, non-
discriminatory reason for Plaintiff's termination.

While it is inevitably for a jury to decide, the statements presented by Plaintiff, if believed, call into question the various incidents and motivations Defendant cites as legitimate, non-discriminatory reasons for Plaintiff's termination. If a jury were to accept this testimony, it would be entitled to find that Defendant manufactured the alleged poor job performance as pretext for terminating Plaintiff because of his age. For this reason, the Court finds that Plaintiff has created a genuine issue of material fact that his termination was a result of age discrimination. Accordingly, Defendant is not entitled to summary judgment with respect to this claim.

IV.  PLAINTIFF'S RETALIATION CLAIMS

Plaintiff has brought retaliation claims under both the ADEA (Doc. 11 ¶¶ 38-41) and the ADA (id. ¶ 43). According to Plaintiff, his complaining to Ms. Gould about being treated differently led to Defendant improperly retaliating against him by transferring him from his original shift and later terminating his employment. In response, Defendant contends that Plaintiff did not engage in a statutorily protected activity; that there is no causal connection between any complaints and the adverse employment actions; and that it has articulated legitimate,

non-discriminatory reasons for his termination. (Doc. 58 at 16-17.)

To establish a prima facie case of retaliation under either the ADEA or ADA, a plaintiff must show (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action; and (3) that there was a causal connection between the two events. E.g., Little v. United Tech., 103 F.3d 956, 959 (11th Cir. 1997). To establish the necessary causal connection, Plaintiff must "proffer evidence sufficient to permit a reasonable fact finder to conclude that discriminatory animus was the 'but-for' cause of the adverse employment action." Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013). Should Plaintiff establish a prima facie case of retaliation, "the employer has the burden of articulating a legitimate non-discriminatory reason for the challenged employment decision." Id. Plaintiff must then demonstrate that the proffered non-discriminatory reason is mere pretext for the unlawful retaliation. Id. (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997)).

In this case, Plaintiff has failed to point to any evidence establishing that he engaged in a statutorily protected activity. In his response, Plaintiff states only

that "he complained to Ms. Gould that he was being treated differently." (Doc. 62 at 20.) Plaintiff does make a passing reference to complaints about age and disability discrimination, along with an allegation that Defendant failed to properly document such complaints. (Id. at 20-21.) However, Plaintiff fails to point to any evidence in the record to support these statements, including anything so simple as a self-serving statement by Plaintiff.

Absent from the record is any actual evidence indicating that Plaintiff informed Ms. Gould, or any other decision-maker, that he felt he was being discriminated against because of his age or disability. This failure is fatal to Plaintiff's claims. See EEOC Compl. Man. (CCH) §§ 8-II-B(2) ("A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination."); Jeronimus v. Polk Cnty. Opportunity Council, Inc., 145 F. App'x 319, 326 (11th Cir. 2005) (finding emails and comments about being singled out and harassed not protected activity because they failed to suggest treatment based on impermissible motive); Hunt v. Gonzales, 2007 WL 245459, at *3 (11th Cir. Jan. 30, 2007) (unpublished) (finding letter complaining of treatment insufficient to establish

plaintiff engaged in protected activity). Quite simply, Plaintiff has failed to identify any evidence in the record that would permit a reasonable jury to conclude that Plaintiff expressed to Defendant a belief that he was being discriminated against due to his age or disability. See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding employee did not engage in statutorily protected activity where no evidence employee actually complained of discrimination). As a result, Defendant is entitled to summary judgment with respect to Plaintiff's retaliation claims.

## V.    PLAINTIFF'S FMLA CLAIM

In this case, Plaintiff cites two instances where Defendant allegedly interfered with his FMLA rights: by calling him while he was on FMLA leave and requesting he attend workplace meetings, and by reassigning him to the weekend night shift after his return from FMLA leave. (Doc. 62 at 21-23.) In its motion, Defendant contends that contacting Plaintiff about upcoming meetings was not a violation of the FMLA. (Doc. 58 at 18-19.) In addition, Defendant reasons that Plaintiff's reassignment was not a change in the terms of his employment because he held the same position, pay, and benefits upon his return. (Doc. 58 at 18-21.)

The FMLA entitles eligible employees to twelve weeks of unpaid leave during a one-year period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2613(a)(1)(D). Following the expiration of the FMLA leave, the employer is required to restore the employee to "the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" Id. § 2614(a)(1). Violations of rights afforded under the FMLA fall into two categories: (1) interference claims, which allege that an employer denied or interfered with an employee's rights; and (2) retaliation claims, which allege that an employer discriminated against an employee because he undertook a protective activity under the FMLA. See Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).

To state an interference claim, a plaintiff must demonstrate that he was denied a benefit to which he was entitled under the FLMA. Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1266-67 (11th Cir. 2008) (per cuiram). However, a valid interference claim must be accompanied by actual prejudice to the employee. See

Demers v. Adams Homes of Nw. Fla., Inc., 321 F. App'x 847, 849 (11th Cir. 2009) (quoting Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). In addition, an employer is liable for interference claims even in the absence of any intent to interfere. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010). Therefore, an employer's proffered legitimate, non-discriminatory reason is irrelevant and not a defense to an interference claim.

Plaintiff's claim that Defendant interfered with his FMLA rights by requesting he attend workplace meetings fails. With respect to that allegation, Plaintiff fails to identify any harm he suffered as a result of Defendant's requests. Plaintiff did not attend any meetings while on FMLA leave, nor does he allege that he terminated his FMLA leave prematurely to attend any meetings. In the absence of any resulting harm, Defendant's requests that he attend workplace meetings while on FMLA leave are not actionable.

However, Defendant's decision to transfer Plaintiff to a new shift upon his return from FMLA leave is more problematic. The Court is unwilling to hold that moving Plaintiff from the Monday through Thursday overnight shift to the Friday through Sunday overnight shift does not alter the terms and conditions of his employment. While unable to identify any case addressing this issue, the Court

recognizes the inherently different nature of the two shifts and the difficulty working weekends may pose to an individual with family living in his home. Changing Plaintiff's schedule such that it makes it exceedingly difficult for him to spend time with his family appears significant enough that a reasonable juror might conclude the change alters the terms and conditions of his employment.

The Court's conclusion finds support in the Department of Labor's regulations concerning FMLA leave. Under the FMLA, an employee returning from leave is entitled to be restored to his former position or its equivalent. 29 U.S.C. § 2614(a)(1). The regulations state that

> [i]f a shift has been eliminated, or overtime has been decreased, an employee would not be entitled to return to work that shift or the original overtime hours upon restoration. However, if a position on, for example, a night shift has been filled by another employee, the employee is entitled to return to the same shift on which employed before taking FMLA leave.

28 C.F.R. § 825.216(a)(2). Therefore, the regulations make clear that changing an employee's shift serves to improperly alter the terms and conditions of his employment. Obviously, the regulations place value on the continuity of schedule for the employee. While Plaintiff in this case worked the same hours, but on the weekend

instead of during the week, that change is schedule seems
sufficiently significant to disrupt the shift continuity
recognized by the regulations to hold a certain degree of
importance. Accordingly, the Court concludes that
Defendant's decision to not permit Plaintiff to return to
his original shift, transferring him to weekends instead,
may alter the terms and conditions of his employment such
that Defendant is not entitled to summary judgment on this
claim.

VI.  PLAINTIFF'S COBRA CLAIM

        In this case, Plaintiff alleges that Defendant
violated COBRA by failing to provide him with notice of his
option to extend his health insurance. (Doc. 11 ¶¶ 53-55.)
In response, Defendant argues that Plaintiff did not accept
its offer for retroactive COBRA coverage. (Doc. 58 at 23-
24.) It appears that Defendant's argument is that
Plaintiff would have had no damages to recover if he
elected the retroactive coverage. (Id.)

        COBRA requires certain employer sponsored group health
plans to provide terminated employees with the option of
electing to continue their health insurance coverage for a
certain period. 29 U.S.C. § 1161(a). The COBRA coverage
must be identical to the coverage provided to all other
participants, with the exception that the former employee

can be required to pay up to 102% of the monthly premiums. Id. § 1162. Defendant does not dispute that it failed to offer Plaintiff COBRA coverage upon his termination.

The issue then becomes the proper determination of Defendant's liability. Defendant seems to argue that it offered retroactive coverage, which would have provided for any medical expenses Plaintiff incurred during those eighteen months and leave Plaintiff with no damages to recover. According to Defendant, Plaintiff's failure to elect the offer of retroactive coverage is a failure to mitigate, entitling it to summary judgment on this claim.

The Court declines to follow Defendant's reasoning. One simple and dispositive fact remains with respect to this claim: Defendant failed to offer Plaintiff COBRA coverage upon his termination. For this failure, Plaintiff is entitled to present evidence to the jury as to the appropriate measure of damages in this case. In addition, the question of statutory penalties and attorney's fees is left to the discretion of the Court. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1231-32 (11th Cir. 2002) (discussing statutory penalties); Wright v. Hanna Steel Corp., 270 F.3d 1336, 1344-45 (11th Cir. 2001) (discussing attorney's fees). Accordingly, Defendant is

not entitled to summary judgment with respect to these damages.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 56) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's request for summary judgment with respect to Plaintiff's claim of discrimination under the Americans with Disabilities Act, ("ADA") and claims of retaliation under the ADA and the Age Discrimination in Employment Act of 1967 ("ADEA") is **GRANTED**. However, Defendant's request for summary judgment with respect to Plaintiff's claims of discrimination under the ADEA, and for violations of the Family Medical Leave Act ("FMLA") and Consolidated Omnibus Budget Reconciliation Act ("COBRA") is **DENIED**.

SO ORDERED this $26\overset{\textit{th}}{\phantom{.}}$ day of September 2014.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA