IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| STEPHEN R. CRIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.: 4:11-CV-00263 |
| NFI NETWORK LOGISTIC | ) | WTM-GRS |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## CONSOLIDATED PRETRIAL ORDER

Counsel for the parties met in the office of counsel for Defendants for approximately forty-five minutes on October 24, 2014 beginning at 10:00 a.m. Attorneys Maury Bowen, R. Clay Ratteree, Paul Sharman and S. Wesley Woolf participated. Counsel have worked together by phone and email since that time to draft this proposed Consolidated Pretrial Order.

1.      Counsel are to discuss and agree on every possible factual stipulation. The stipulations must be reduced to writing, signed and filed with the consolidated proposed pretrial order at ATTACHMENT "A" hereto. **Stipulations can spare witness testimony, trial time, and expense. If a party feels the other side is in bad faith refusing to stipulate, they shall set forth "proposed stipulations" on ATTACHMENT "A." Costs of proving what, at trial, was never really disputed and what should have been stipulated, may be taxed against the offending party and attorney. Those costs may include witness fees and additional attorney preparation time costs.**

### SEE ATTACHMENT "A" PROVIDED HEREWITH.

2.      As ATTACHMENT "B" to the proposed pretrial order, the parties may, but are not required to, submit questions which they desire the Court to propound to jurors concerning their legal qualifications to serve and any other questions they wish propounded for information purposes. If the parties choose to

submit general voir dire questions hereunder, they may submit the questions jointly as one attachment or separately as ATTACHMENTS "B-1" and "B-2."

**<u>PLAINTIFF</u>:     SEE ATTACHMENT "B-1" PROVIDED HEREWITH.**

**<u>DEFENDANT</u>:     SEE ATTACHMENT "B-2" PROVIDED HEREWITH.**

3.     State the names of all parties, firms and attorneys to be used in qualifying the jury.  State the name of any insurance company involved, and whether it is a stock or mutual company.  State the names of all counsel who are members of any firm involved on a contingent fee basis.   At the pretrial conference, counsel may be required to disclose policy limits and details of any insurance coverage.

**<u>PLAINTIFF</u>:     Paul Sharman**
**The Sharman Law Firm LLC**

**S. Wesley Woolf**
**S. Wesley Woolf P.C.**

**<u>DEFENDANT</u>:**
**Maury Bowen**
**R. Clay Ratterree**
**Ellis, Painter, Ratterree & Adams, LLP**

**Daniel Deitch**
**NFI Network Logistic Solutions, LLC**

4.     Identify the basis upon which the jurisdiction of this Court is based and any questions relating to its jurisdiction.

**Jurisdiction is based on 28 U.S.C. § 1331 (federal question).  Stephen R. Cribbs ("Plaintiff") is suing NFI Network Logistic Solutions LLC ("Defendant") for claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"), and the Consolidation Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161, *et seq*. ("COBRA").**

**The parties are not aware of any questions relating to jurisdiction of this Court in this case.**

5.    List any motions or other matters in the case which remain unresolved.  Any motion not so enumerated shall be deemed withdrawn by the moving party.

**The parties will file any desired evidentiary motions and Motions in Limine at least five days prior to the pretrial conference as directed in the Court's Order.**

6.    All discovery is to be completed pursuant to the Local Rules.  The date of the conclusion of the discovery process and the expected completion of any untranscribed deposition shall be stated.

**Discovery was completed pursuant to the Local Rules on or before November 2, 2012.  All depositions have been transcribed.**

7.    State whether the names of the parties in the above-captioned case(s) are complete and correct and whether there is any question of misjoinder or non-joinder.

**The parties believe that the names of the parties as they appear in the above-captioned case are complete and correct and that there are no questions of misjoinder or non-joinder.**

8.    Outline of plaintiff(s)' case.

**NOTE:**    **PLAINTIFF(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH.  AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

Plaintiff(s) shall furnish a short, succinct, factual and narrative statement of the cause of action.  This statement should not be argumentative and should not recite evidence.  In no event shall the statement be more than one page.

**<u>PLAINTIFF</u>:**

**There are three remaining claims in this case.  First, Plaintiff claims that his former employer, NFI Network Logistic Solutions, LLC ("NFI"), violated the Family and Medical Leave Act ("FMLA") by not restoring him to**

an equivalent position upon return from FMLA leave.  Second, Plaintiff claims that NFI discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA").  Finally, Plaintiff claims NFI is liable to Plaintiff for not sending out timely COBRA health care continuation notice.

Plaintiff was hired by Defendant NFI on March 9, 2000 as a Shift Supervisor and was eventually promoted to Shift Manager.  Plaintiff took approved FMLA-protected leave from February 10, 2010 until March 9, 2010.  When Plaintiff returned to work on March 9, 2010, he was assigned to a shift on different days of the week with different working hours at a different work location.

Plaintiff was 52 years old when he took FMLA leave.  Approximately six days after Plaintiff's FMLA period began, a younger female manager was placed in Plaintiff's old position on a permanent basis.

Plaintiff received three separate write-ups between September 17, 2010 and October 20, 2010.  Plaintiff was then told he would be suspended for one day on October 22, 2010.  On October 22, 2010, Plaintiff was contacted via telephone and terminated.  He was told verbally that his termination was for recording a conversation between himself, his supervisor and human resources.  Plaintiff later received a separation notice stating that the termination was for failure to perform management duties as directed by his supervisor and for poor performance.

Following his termination and despite repeated requests, Plaintiff was not provided notification of his COBRA rights until May 15, 2012.

Damages sought by Plaintiff for violation of the ADEA include back pay, liquidated damages, front pay in lieu of reinstatement, and attorneys' fees and expenses of litigation.  Damages sought by Plaintiff for violation of the FMLA include back pay, benefits, and other monetary losses, liquidated damages, front pay in lieu of reinstatement, and attorneys' fees and expenses of litigation.  Damages sought by Plaintiff for violation of COBRA include $110 per day for each day that Defendant violated the statute in failing to send timely notification and expenses of litigation.

9.     Outline of defendant(s)' case.

4

**NOTE:**     **DEFENDANT(S) SHOULD PAY PARTICULAR ATTENTION TO THIS PARAGRAPH.  AT THE TRIAL, IT WILL BE USED BY THE COURT IN DIRECTING THE CASE AND INSTRUCTING THE JURY.**

Defendant(s) shall:

(a)     Furnish a <u>short</u>, <u>succinct</u>, factual and narrative statement as to all defenses (general and special).  This statement should not be argumentative and should not recite evidence.  In no event shall the statement be more than one page.

(b)     In all actions involving a counterclaim cross-claim, or third-party action, defendant(s) should summarize the matter, using the outline required as to the main claim.

<u>**DEFENDANT**</u>:

**While Plaintiff was employed as an at-will employee in the position of Shift Manager at the NFI distribution facility (the "DC" facility) in 2009 and 2010, there were numerous problems on his shift and management received many complaints from both associates on Plaintiff's shift as well as NFI's all-important customer, Georgia Pacific. Upon investigation of the problems and complaints about Plaintiff's shift, NFI confirmed that Plaintiff had violated policies and procedures, and falsification of records had occurred on his shift; therefore, disciplinary action was warranted. After taking into account Plaintiff's long tenure with the company, NFI management decided not to terminate Plaintiff but to transfer Plaintiff away from his night-shift at the DC facility to the night-shift at the "Mill" facility down the street (keeping the same pay, benefits and title) to correct the problems on his shift at the DC and to give Plaintiff a fresh start. NFI communicated this transfer to Plaintiff as soon as was possible, which happened to be when Plaintiff was released to return to work after an approved FMLA leave.**

**After Plaintiff was transferred to the Mill facility, Plaintiff continued to breach NFI policy and perform poorly and, as a result, NFI issued additional progressive disciplinary actions to Plaintiff in keeping with NFI's procedures. During one of those disciplinary meetings, Plaintiff secretly recorded the conversation without his supervisor's knowledge. NFI considered this action by a member of management to be a breach of trust, as well as a breach of**

5

NFI's Code of Conduct; as a result, NFI decided to terminate Plaintiff's employment after taking into account the Plaintiff's disciplinary history.

With regard to Plaintiff's claim that NFI violated the FMLA by not restoring him to an equivalent position, the evidence will also show that, upon Plaintiff's return from FMLA leave, NFI placed Plaintiff in a position that was equivalent in all material aspects to the position he held prior to going on FMLA leave.  Further, Plaintiff did not suffer any economic harm due to being transferred to the Mill.

Plaintiff must prove that he suffered compensatory damages in the amount equal to medical expenses incurred minus deductibles and premiums. Further, penalties under COBRA are not automatic, but are within the discretion of the Court based on whether NFI acted in bad faith and Plaintiff suffered prejudice.

10.    In all cases in which violation of the United States Constitution or a federal or state statute or regulation is alleged, the party making such claim shall specifically state the constitutional provision and/or statute allegedly violated and the specific facts on which such alleged violation is based.  The party shall detail the damage or relief sought pursuant to such claim and recite supporting authority.

## PLAINTIFF:

Plaintiff alleges that NFI Network Logistic Solutions LLC violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA") by discriminating against Plaintiff in violation of the statute (McDonnell Douglas v. Green, 411 U.S. 792 (1973); Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1375 (11th Cir. 1996); David v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000); Chapman v. Al Transp., 229 F.3d 1012, 1024 (11th Cir. 2000); Mitchell v. City of Lafayette, 2013 WL 310063, at *1 (11th Cir. Jan. 28, 2013).  Damages sought by Plaintiff for this violation include back pay (Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)), liquidated damages (Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094 (11th Cir. 1987)), front pay in lieu of reinstatement (Lewis v. Federal Prison Industries, Inc., 953 F.2d 1277 (11th Cir. 1992)), and attorneys' fees and expenses of litigation 29 U.S.C.S. § 216(b).

Plaintiff further alleges NFI Network Logistic Solutions LLC violated the Family Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA") by

interfering with Plaintiff's rights under the statute.   (28 C.F.R. §
825.216(a)(2); Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1266-67
(11th Cir. 2008) (per curiam).  Damages sought by Plaintiff for this violation
include back pay, liquidated damages, front pay in lieu of reinstatement, and
attorneys' fees and expenses of litigation. *Evans v. Books-A-Million*, 762 F.3d
1288, 1300 (11th Cir. 2014).

Plaintiff further alleges NFI Network Logistic Solutions LLC violated
the Consolidation Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §
1161, et. seq. ("COBRA") by failing to notify him of his rights in the time
prescribed by the statute.  Penalties sought by Plaintiff for this violation
include $110 per day for each day that Defendant violated the statute in
failing to send timely notification, 29 U.S.C. § 1132, 29 C.F.R. § 2575.502c-1,
and attorneys' fees and expenses of litigation. *Evans, supra*.

11.    In tort cases, any party bearing a burden of proof shall list each and
every act of negligence or intentional tort relied upon.

(a)    Under a separate heading, state all relevant statutes, rules, regulations
and ordinances allegedly violated.  Also, recite any supporting authority.

**Not applicable.**

(b)    List all items of damages claimed or non-monetary relief sought.

**Not applicable.**

(c)    In all cases involving alleged permanent injuries or death, furnish a
full statement as to the age, alleged life expectancy and/or probably duration of the
injuries, and earnings, income tax records or other records to prove earnings.

**Not applicable.**

12.    In contract cases or other action not addressed in paragraphs 10 or 11,
any party having a burden of proof shall outline the particular alleged breach of
contract or the basis of any other cause of action, enumerate any applicable statute
involved, and detail the damages or relief sought and recite appropriate supporting
authority.

**Not applicable.**

13.     If there is any dispute as to agency, state the contentions of the parties with respect to agency.

**There is no dispute as to agency.**

14.     State who has the burden of proof (including any affirmative defenses or special issues) and who has the opening and closing arguments to the jury.

**Plaintiff has the burden of proof as to his claim of age discrimination under the ADEA and all necessary elements thereof.**

**Plaintiff has the burden of proof as to his claim of breach of the FMLA and all necessary elements thereof.**

**Once Plaintiff meets his burden of proof as to the ADEA and FMLA claims, Defendant has the burden of demonstrating the affirmative defense that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment.**

**Once Defendant has met its burden of demonstrating a legitimate non-discriminatory reason for terminating Plaintiff's employment, Plaintiff has the burden of proving that NFI's legitimate non-discriminatory reason for terminating Plaintiff's employment was a pretext.**

**Plaintiff has the burden of proving that NFI failed to restore him to a materially equivalent position after his FMLA leave.**

**Plaintiff has the burden of proving that he suffered economic damages as a result of NFI's failure to restore him to a materially equivalent position after his FMLA leave.**

**Plaintiff has the burden of proving that he suffered compensatory damages (in an amount equal to medical expenses incurred minus deductibles and premiums) as a result of receiving the COBRA notice in an untimely fashion.**

With regard to the question of COBRA penalties imposed in the Court's discretion, Plaintiff has the burden of proving that he was prejudiced by receiving the COBRA notice in an untimely fashion.

With regard to the question of COBRA penalties imposed in the Court's discretion, Plaintiff has the burden of proving that NFI acted in bad faith with regard to the untimely COBRA notice.

Plaintiff has the opening and closing arguments to the jury.

15.    Under this paragraph, both plaintiff(s) and defendant(s) should separately list the witnesses whom each <u>will</u> have present at the trial and those whom each <u>may</u> have present at the trial.  Witnesses intended to be used solely for impeachment shall be listed; however, if a party has a genuine reason for not listing and disclosing an impeachment witness, such party may address the Court *ex parte* and seek a ruling as to whether disclosure may be properly withheld.  A representation that a party <u>will</u> have a witness present may be relied on by the opposing party unless notice to the contrary is given in sufficient time prior to trial to allow the opposing party to subpoena the witness or obtain his testimony.  If a witness is not listed when the proposed pretrial order is filed, the Court will not allow the addition of a witness by any party, EXCEPT for providential or other good cause shown to the Court by application for amendment to this Order.

NOTE:    COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK <u>THREE</u> COPIES OF THE TYPED WITNESS LIST AT THE PRETRIAL CONFERENCE.

<u>Plaintiff WILL have present at trial:</u>

Stephen Randell Cribbs
Debra Cribbs

<u>Plaintiff MAY have present at trial:</u>

Reggie Pero
Jeremy Walker
Jerry McKenzie
Thomas Ruarks
DiTisha Jackson
Deborah Gould

**Felicia Roberson**
**Tom Diego**
**Any witness not listed above who is listed by the Defendant**


**<u>DEFENDANT</u>:    <u>WILL CALL WITNESSES</u>:**

**Rhonda L. Butler**
**Deborah Gould**
**Pat Byrnes**
**Christopher West**

**<u>MAY CALL WITNESSES</u>:**

**Randall Cribbs**
**Deborah Cribbs**
**Reginald Pero**
**Tom Diego**
**Jeremy Walker**
**Karol Kempke**
**Johnnie Holmes**
**Patrick Tomlinson**
**Janet Shelton**
**Ruth Rector**
**David Starling**
**Nathaniel Griffin**
**Jerry McKenzie**
**Susan Robert**
**Elizabeth Walker**
**Janeth Villalobos**
**Any witness listed by the Plaintiff.**

16.    All documents and physical evidence that may be tendered at the trial shall be exhibited to and initialed by opposing parties <u>prior to the pretrial conference</u>.   All evidence shall be marked by the parties prior to the pretrial conference, and <u>the parties are encouraged to submit a joint exhibit list on a form supplied by the Clerk</u>.   If separate exhibit lists are submitted, they shall be submitted on the forms supplied.   Duplications of exhibits should be avoided to the extent practicable.   Exhibit lists should be submitted to the Court at the pretrial conference.   The material therein shall be identified as follows:

(a)     A list of documents and physical evidence submitted as joint exhibits.

**The parties have agreed that they will submit to the Clerk, at the pretrial conference, a joint list of all documents and physical evidence that will be tendered at the trial.  If the parties are unable to agree on a particular document or exhibit, they will provide lists, which will include any objections and reasons for such objection. Such objections and reasons shall be put in writing and filed with the Court five (5) days prior to the time of the pretrial conference.**

**All exhibits will be marked and initialed by opposing parties prior to the pretrial conference and will be listed on the appropriate forms supplied by the Clerk.  Each party reserves the right to introduce exhibits listed by the other party.**

(b)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the plaintiff(s).  Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefore shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference.  Items not objected to will be admitted when tendered at trial.

(c)     Where separate lists are being submitted, a list of documents and physical evidence to be introduced by the defendant(s).  Copies of such exhibits shall be provided to counsel for each other party.

Objections and reasons therefore shall be stated in writing and be filed five (5) days prior to the time of the pretrial conference.  Items not objected to will be admitted when tendered at trial.

(d)     Any document or other physical evidence listed by any party and not objected to, or to which objections have been overruled, may be received in evidence on offer by any other party, in the event the listing party does not actually offer it into evidence.

(e)     The foregoing shall not be deemed or construed to expand or limit the rules relating to the admissibility of evidence generally.

11

**NOTE:**     **COUNSEL MUST SUBMIT TO THE COURTROOM DEPUTY CLERK <u>THREE</u> COPIES OF THE TYPED EXHIBIT LIST AT THE PRETRIAL CONFERENCE.  All exhibits shall be cross-initialed by the attorneys for the parties and properly tagged as required by the Local Rules of this District.  This cross-initialing procedure shall be completed when counsel meet to confer on the preparation of the pretrial order.**

17.     List all witnesses whose testimony by deposition will or may be offered by each party and the specific deposition pages and lines to be offered.  All objections by opposing parties to any portions of the deposition(s) shall be set forth with specific reference to the portion of the testimony objected to and the basis therefore.

**The parties reserve the right to depose and use the deposition of any witness who becomes unavailable for trial. The parties reserve the right to use deposition testimony for impeachment purposes. The parties agree that if a party opposes any portions of the deposition(s) offered by the other party, that opposing party shall set forth in his or her objection with specific reference to the portion of testimony objected to and the basis for his or her objection.**

(a)     Prior to trial, counsel shall confer to eliminate all extraneous, redundant, and unnecessary matter, lapses, and colloquy between counsel in the deposition excerpts.  Counsel shall also attempt to resolve all objections to deposition testimony to be offered.

(b)     The parties shall, if practicable, conform deposition exhibit numbers in trial questions and testimony to the numbers of trial exhibits.

18.     Each party shall separately provide a memorandum of authorities as to any questions of law likely to arise at the trial, including the merits of plaintiff(s)' claim, defenses asserted, matters of evidence, etc.

**<u>PLAINTIFF</u>:     See Exhibit "1" attached.**

**<u>DEFENDANT</u>:     See Exhibit "2" attached.**

19.     Plaintiff's counsel estimates **two (2)** days to present plaintiff's case; Defendant's counsel estimates **two (2)** days to present the defense.

20.    Plaintiff has offered to settle.
       Defendant has offered to settle.

It appears at this time that there is
       _____ A good possibility of settlement.
       __X__ Some possibility of settlement.
       _____ No possibility of settlement.

The parties _____ do __X__ do not wish to confer with the Court regarding settlement.

21.    State any other matters which should be covered by pretrial order, including rulings desired of the Court prior to trial.

**PLAINTIFF:**     **Plaintiff's may file a motion in limine.**

**DEFENDANT:**     **Defendants intend to file a motion in limine.**

22.    State whether or not the issues of liability and damages should be tried separately (bifurcated) and give any other suggestion toward shortening the trial. Where bifurcation is opposed by any party, such party shall state the reasons for such opposition.

                    **Bifurcation is not requested.**

23.    In cases where either party requests bifurcation of issues or a special verdict, submit a copy of the proposed verdict as PLAINTIFF'S ATTACHMENT "C" and/or DEFENDANT'S ATTACHMENT "C" hereto.  Lead counsel are to discuss and agree on such special verdict where possible.  Where agreement is not reached, state the basis for any objections to the special verdict request.

                    **Not applicable.**

24.    In non-jury cases, the parties shall each file their proposed findings of fact, summary of depositions, and conclusions of law not later than one week prior to the assigned trial date.

                    **Not applicable.**

25.    The final proposed pretrial order shall be signed by counsel for each party and shall contain a final paragraph, as follows:

> **IT IS HEREBY ORDERED that the foregoing constitutes a PRETRIAL ORDER in the above case(s), that it supersedes the pleadings which are hereby amended to conform hereto and that this PRETRIAL ORDER shall not be amended except by ORDER OF THE COURT.**

S. WESLEY WOOLF, P.C.


By:    _/s/ S. Wesley Woolf_
         S. Wesley Woolf, Esq.
         Georgia Bar No. 776175
         Attorney for Plaintiff
         408 East Bay Street
         Savannah, GA 31401
         912-201-3696
         woolf@woolflawfirm.net


THE SHARMAN LAW FIRM LLC


By:    _/s/ Paul J. Sharman_
         Paul J. Sharman, Esq.
         Georgia Bar No. 227207
         11175 Cicero Drive, Suite 100
         Alpharetta, GA 30022
         (678) 242-5297
         paul@sharman-law.com


**[signatures continued on next page]**

ELLIS, PAINTER, RATTERREE & ADAMS, LLP


By:     */s/ Maury Bowen*
        Maury Bowen
        Georgia Bar No. 071112
        mbowen@epra-law.com
        R. Clay Ratterree
        Georgia Bar No. 595312
        ClayR@EPRA-Law.com
        Attorneys for Defendant
        2 E. Bryan St., 10th Floor
        Savannah, GA 31401
        (912) 233-9700




                                      _____
                                      UNITED STATES DISTRICT JUDGE

# ATTACHMENT "A"
# JOINT STIPULATIONS

1. Plaintiff is male.
2. Plaintiff's birthdate is October 27, 1958.
3. Plaintiff timely filed an EEOC charge.
4. Plaintiff timely filed this lawsuit following the issuance of a Notice of Right to Sue by the EEOC.
5. Defendant is a Georgia limited liability company doing business in the Southern District of Georgia, and is an "employer" within the meaning of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), and Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA").
6. Plaintiff was hired on March 9, 2000 by Defendant NFI's predecessor.
7. Defendant NFI was Plaintiff's employer at all times material to the action.
8. In February 2010, Plaintiff was working a Monday through Thursday night shift at an NFI location known as the "DC" facility.
9. Plaintiff took approved FMLA-protected leave from February 9, 2010 until March 9, 2010.
10. When Plaintiff returned from FMLA-protected leave on March 9, 2010, he was assigned to a shift at the "Mill" facility working Friday through Sunday nights.
11. Plaintiff's former position at the "DC" facility was filled by Rhonda Butler, a younger female.
12. Plaintiff received three write-ups between September 17, 2010 and October 20, 2010.
13. Defendant discharged Plaintiff from employment on October 22, 2010.
14. Defendant provided Plaintiff notification of his COBRA rights on May 15, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| STEPHEN R. CRIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.: 4:11-CV-00263 |
| NFI NETWORK LOGISTIC | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## ATTACHMENT "B-1"

## PLAINTIFF'S PROPOSED VOIR DIRE

Plaintiff Stephen R. Cribbs respectfully submits the following proposed

questions to be propounded to the jury:

1. Please state your name, address, and occupation.
2. Do you know any of the lawyers or parties who were just introduced?
3. (After an explanation of the nature of the case) Have you read or heard anything about the case before coming here today?
4. Are you familiar with any of the following entities: NFI Network Logistics Solutions, LLC, NFI Industries, NFI, NFI-NLS or Georgia Pacific?
5. If so, describe how you are familiar with that entity.
6. Has anyone on the jury panel or a family member ever sought work at, or been employed by, any of those entities?
7. Has anyone on the jury panel or a family member ever worked in the trucking, warehousing or logistics industry?

1

8.  Have you ever served on a jury before?  If so, a) when did you serve, b) what was the nature of the case, c) was a verdict reached, and d) what was the verdict?

9.  Have you ever been involved in a civil case before as plaintiff, defendant, or witness?  If yes, what was the outcome?

10. Has anyone on the jury panel or a family member ever filed a claim against your employer or had any claim filed against you as an employer?  If yes, what was the outcome?

11. Has anyone on the jury panel or a family member worked as a manager or supervisor?

12. Has anyone on the jury panel or a family member had an experience at work in which you felt that you were treated unfairly as a result of your age or medical condition?  If yes, explain.

13. Have any of your family members or close friends ever made a claim under the Age Discrimination in Employment Act, the Family Medical Leave Act or COBRA?

14. Have you or any family member or close friends ever been employed in a human resources position or other position that involved administering or applying anti-discrimination laws?

15. Have you ever owned a business? If yes, have you ever had a complaint filed against you by an employee of the business in relation to employment?

16. Does anyone on the jury panel believe that there should be no law protecting employees against age discrimination or discrimination related to an employee's medical conditions?

17. Has anyone on the jury panel or a family member ever been involved as a party or a potential witness in a lawsuit alleging discrimination for any reason?

18. Do any of you know any of the following people who the plaintiff might call to testify at this trial:

    a.  Stephen Randell Cribbs
    b.  Debra Cribbs
    c.  Reggie Pero
    d.  Jeremy Walker
    e.  Jerry McKenzie
    f.  Thomas Ruarks

      g.  DiTisha Jackson

      h.  Deborah Gould

      i.  Felicia Roberson

      j.  Tom Diego

19. Do any of you know any of the following people who the defendants might call to testify at this trial:

      a.  Rhonda L. Butler

      b.  Deborah Gould

      c.  Pat Byrnes

      d.  Christopher West

      e.  Randall Cribbs

      f.  Deborah Cribbs

      g.  Reginald Pero

      h.  Tom Diego

      i.  Jeremy Walker

      j.  Karol Kempke

      k.  Johnnie Holmes

      l.  Patrick Tomlinson

      m. Janet Shelton

      n.  Ruth Rector

      o.  David Starling

      p.  Nathaniel Griffin

      q.  Jerry McKenzie

      r.  Susan Robert

      s.  Elizabeth Walker

      t.  Janeth Villalobos

20. If you know one or more of them, could you set those feelings aside and give the parties in this case a fair and impartial trial based on the evidence presented to you?

21. Will you follow my instructions about these rules of law as well as the other instructions that will be given to you at the end of the case?

22. This trial is expected to last 5 days. Does anyone on the jury panel have any reason why you could not serve on this jury for that length of time?

23. Do you know of any reason why you could not serve on this jury if selected?

24. What are your favorite types of reading material, including newspapers and magazines you read and any book you are currently reading?

25. What are your favorite types of television shows?

26. Do you regularly listen to talk radio, and if so, to which programs?

27. Do you regularly use the internet to visit sites other than e-mail and if so, what types of sites you visit most often?

THE SHARMAN LAW FIRM LLC

*/s/Paul J. Sharman*
PAUL J. SHARMAN, ESQ.
Georgia State Bar No. 227207
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Phone: (678) 242-5297
Fax: (678) 802-2129
Email: paul@sharman-law.com

S. WESLEY WOOLF, P.C.

*/s/ S. Wesley Woolf*
S. Wesley Woolf, Esq.
Georgia State Bar No. 776175
408 East Bay Street
Savannah, GA 31401
Phone: (912) 201-3696
woolf@woolflawfirm.net

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

STEPHEN R. CRIBBS,                                      )
                                                        )
                          Plaintiff,                    )
                                                        )
v.                                                      )
                                                        )       CIVIL ACTION NO.: 4:11-CV-00263
NFI NETWORK LOGISTIC                                    )                  WTM-GRS
SOLUTIONS, LLC,                                         )
                                                        )
                          Defendant.                    )

## ATTACHMENT "B-2"

## DEFENDANT'S PROPOSED VOIR DIRE

Defendant NFI Network Logistics Solutions, LLC ("NFI"), respectfully submits the

following proposed questions to be propounded to the jury.

1. Are you familiar with any of the following entities: NFI Network Logistics

   Solutions, LLC, NFI Industries, NFI, or NFI-NLS?

2. If so, described which one and how you are familiar with that entity.

3. Has anyone on the jury panel ever sought work at, or been employed by, any of

   those entities?

4. Are you familiar with Georgia Pacific?

5. If so, described which one and how you are familiar with Georgia Pacific.

6. Has anyone on the jury panel ever sought work at, or been employed by,

   Georgia Pacific?

7. Has anyone on the jury panel ever worked in the logistics industry?

8. Does anyone have a family member who has ever worked in the logistics

   industry?

9.  Has anyone on the jury panel ever been involved in a lawsuit against their employer?

10. Does anyone have a family member who has been involved in a lawsuit or claim involving their employer?

11. Has anyone on the jury panel ever been involved in a lawsuit alleging discrimination for any reason?

12. Has anyone on the jury panel ever been involved in a lawsuit alleging FMLA violations?

13. Has anyone on the jury panel ever been involved in a lawsuit alleging COBRA violations?

14. Do any of you know the Plaintiff in this case? If so, what is your relationship?

15. Do any of you know any of the following people who the Plaintiffs might call to testify at this trial:

    _____

    _____

16. If you know one of them, could you set those feelings aside and give the defendant in this case a fair and impartial trial based on the evidence presented to you?

17. Do any of you know any of the following people who the defendants might call to testify at this trial:

Rhonda L. Butler

Deborah Gould

Pat Byrnes

Christopher West

Randall Cribbs

Deborah Cribbs

Reginald Pero

Tom Diego

Jeremy Walker

Karol Kempke

Johnnie Holmes

Patrick Tomlinson

Janet Shelton

Ruth Rector

David Starling

Nathaniel Griffin

Jerry McKenzie

Susan Robert

Elizabeth Walker

Janeth Villalobos

18. If you know one of them, could you set those feelings aside and give the parties in this case a fair and impartial trial based on the evidence presented to you?

19. Have any of the panelists ever been litigants either as plaintiffs or defendants?

     a.  If so, when?

     b.  What was the general nature of the dispute?

     c.  Was the panelist a plaintiff or defendant?

d. What was the outcome of the litigation?

20. Is there anything about that experience that would cause the panelist to have any reservations or bias for or against either side?

21. Have any of the panelists served as jurors before?

      a. If so, when?

      b. What was the nature of the case?

      c. Was a verdict reached?

      d. If so, what was the verdict?

22. Is there anything about that experience that would cause the panelist to have any reservations or bias for or against any of the parties here?

Respectfully submitted this __ th day of October, 2014,

ELLIS, PAINTER, RATTERREE & ADAMS

  **/s/ Maury Bowen**
MAURY BOWEN, ESQUIRE
2 East Bryan Street, Tenth Floor
Savannah, GA 31401
(Office)    (912) 231-2732
(Facsimile)  (912) 233-2281
Email      mbowen@EPRA-LAW.COM

*Counsel to Defendant NFI Network Logistics*
*Solutions, LLC*

−4−

1357770.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| STEPHEN R. CRIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.: |
| | ) | 4:11-CV-00263-WTM |
| NFI NETWORK LOGISTIC | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT 1**
**To the Consolidated Pre-Trial Order**

**Plaintiff's Memorandum of Authorities**

I.    **Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA")**

"The ADEA makes it 'unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or   privileges of employment, because of such individual's age.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*) (quoting 29 U.S.C. § 623(a)(1)).  Where there is no direct evidence of such discrimination, as here, this Court must use the *McDonnell*

*Douglas*[1] framework to evaluate ADEA claims based upon circumstantial evidence. Under that framework, the plaintiff first must show that he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *Chapman*, 229 F.3d at 1024.

It is undisputed that Plaintiff was a member of a protected age group and that he was replaced by a younger person.  Neither is it disputed that his discharge constitutes an adverse employment action for purposes of ADEA analysis.

Plaintiff was qualified for his job and his burden in showing that he was qualified is exceedingly light.  *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996) (in ADEA discrimination claim plaintiff must show only that he was qualified to do the job).  Plaintiff has shown he was qualified to perform his job as shift supervisor by virtue of his tenure at NFI and other employees' testimony about his qualifications.  See *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999). The fact that Plaintiff got regular raises and performance bonuses further supports the conclusion that he was qualified to do his job.  *See, e.g., Hughes v. Flint Golf Club*, 2009 U.S. Dist. LEXIS 54028, *23 (E.D. Mich. June 25, 2009) (*prima facie* case of ADEA discrimination shown where plaintiff received merit bonuses and raises almost every year she worked in a capacity

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

similar to that of Clubhouse Manager);  *Borrelli v. Metal Traders, Inc*., 2008 U.S. Dist. LEXIS 56414, *38 (W.D. Pa. July 24, 2008) (plaintiff showed he was qualified for the job in light of his former raises and bonuses).

Although presentation of the evidence at trial does not, and almost certainly will not, follow the structure of the McDonnell Douglas scheme of proof, Defendants  may seek a directed verdict on elements of the prima facie case. In that regard, allegations of poor performance are not part of a prima facie case analysis and may not be considered until <u>after</u> a *prima facie* case has been made.  *Damon*, 196 F.3d at 1360.   Accord *Weldon,* 896 F.2d at 798 (in evaluating plaintiff's objective qualifications, court must disregard allegations of poor performance).

### A.  Comparator Issues.

To the extent issues related to similarly situated comparators may arise at trial, a comparator analysis can be helpful in establishing discriminatory intent, but there is more than one way to show discriminatory intent using indirect or circumstantial evidence.  *Smith v. Lockheed–Martin Corp.,* 644 F.3d 1321 (11th Cir. 2011).   The Eleventh Circuit has allowed alternative formulations of the prima facie case that do not require comparators.  *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1284 (11th Cir. 2008).   As stated in *Smith v. Lockheed-Martin Corp.*:

A  plaintiff  may  raise  a  reasonable  inference  of  the  employer's

discriminatory intent through various forms of circumstantial evidence. *Rioux v. City of Atlanta,* 520 F.3d 1269, 1281 (11th Cir.2008) (holding that the plaintiff established a prima facie case of racial discrimination when he did not present evidence of a comparator but presented other circumstantial evidence that was sufficient); *see also Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir.2010) (stating that the circumstantial evidence necessary to present a Title VII case of discrimination under *McDonnell Douglas* is "flexible and depend[s] on the particular situation" (citations omitted)); *cf. Burke–Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1325 (11th Cir.2006) (affirming the district court's grant of summary judgment because plaintiff "failed to establish valid comparators and presented *no other circumstantial evidence suggesting racial discrimination*" (emphasis added)). Yet, no matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper.

*Smith v. Lockheed-Martin Corp.,* 644 F.3d at 1328.  Defendant may be held liable if "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith, supra* (citations and internal quotation marks omitted) citing, *Silverman v. Bd. of Educ.,* 637 F.3d 729, 734 (7th Cir.2011).  Plaintiff does not have to show a comparator if he can show enough non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination.   *Smith v. Lockheed, supra*; see also *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316 (11th Cir. 2012), and *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249 (11th Cir. 2012).

### B.  Causation.

Proof of pretext and the related "but for" standard of causation under

4

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) may be an issue the Court will address.  In *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013), the Supreme Court extended the "but for" causation standard to retaliation claims which are not present in this case after the Court's order [Doc. 66] on Defendant's Motion for Summary Judgment.   Importantly, however, in the recent case of *Burrage v. United States*, __ U.S. __, 134 S. Ct. 881, 888, 187 L. Ed. 2d 715 (2014), the Supreme Court construed the meaning of "but for" causation, explicitly clarifying its own precedents in employment discrimination law to mean that there can be more than one "but for" cause.  In discussing its prior opinions in *Nassar* and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009), Justice Scalia, for the unanimous court, quoted *Nassar* and *Gross* but substituted a bracketed "[a]" for the word "the" preceding the expression "'but for' cause."[2] If the legal precision of Justice Scalia's (and the

---

[2] In *Gross*, the court actually states that "a plaintiff must prove that age was *the* 'but for' cause of the employer's adverse decision."  *Gross*, 557 U.S. at 176 (2009).  The court in *Burrage* held as follows:

> Given the ordinary meaning of the word "because," we held that § 2000e–3(a) "require[s] proof that the desire to retaliate **\*889** was [a] but-for cause of the challenged employment action." *Nassar, supra*, at ——, 133 S.Ct., at 2528. The same result obtained in an earlier case interpreting a provision in the Age Discrimination in Employment Act that makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). Relying on dictionary definitions of "[t]he words 'because of' "—which resemble the definition of "results from" recited above—we held that "[t]o establish a disparate-treatment claim under the plain language of [§ 623(a)(1) ] ... a plaintiff must prove that age was [a] 'but for' cause of the employer's adverse decision."

5

court's) carefully intended word choice is not fully instructive, the court uses other language to illustrate the conclusion: "'where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died.' *LaFave* 467-468 (italics omitted).[3] The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so-if, so to speak, it was *the straw that broke the camel's back*." *Burrage v. United States*, __ U.S. __, 134 S. Ct. 881, 888, 187 L. Ed. 2d 715 (2014) (italics supplied).

Thus, in *Burrage*, an overdose of heroin killing a person with many other infirmities was the "but for" cause of death even though the heroin, acting alone, would not have been enough to cause death. The heroin can have the slightest effect and be the weakest of a thousand causes, so long as it is the cause that pushes the outcome that final, albeit, short distance. Accordingly, "but for" causation does not require a showing that age was the sole cause Plaintiff's termination from employment. The *Burrage* decision destroys any attempt by defense counsel to have the Court over-read *Gross* and *Nassar* by adopting a sole-cause standard of causation for Plaintiff's age discrimination claim.

### C.  Pretext.

---

*Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

*Burrage v. United States*, 134 S. Ct. 881, 888-89, 187 L. Ed. 2d 715 (2014) (citations omitted).

[3] 1 W. LaFave, Substantive Criminal Law (2d ed. 2003).

"Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted).  And once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  "If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnote omitted).

## II.     Family Medical Leave Act, 29 U.S.C. § 2601, *et. seq*. ("FMLA").

### A.  Liability.

In order to establish a claim of interference under the FMLA, a plaintiff must show by the preponderance of the evidence that he was denied a right to which he was entitled under the FMLA that was denied by his employer. Martin v. Brevard Cnty. Pub. Schs., 543 F.3d 1261, 1266-67 (11th Cir. 2008) (per curiam).  The employer is liable for an interference claim even in the absence of any intent to interfere.  Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010).  In other words, "a causal nexus is not an element of an interference claim." *Spakes v. Broward County Sheriff's Office*, 631 F.3d 1307, 1309 (11th

Cir. 2011).

If during his absence, the employee's night shift position has been filled by another employee, the employee is entitled to return to the former position (or its equivalent) and to the same shift on which he worked before taking FMLA leave. 29 U.S.C. § 2614(a)(1), 28 C.F.R. § 825.216(a)(2).  The fact that the new position provided the same pay and benefits does not change this analysis.  See *McGrenaghan v. St. Denis School*, 979 F. Supp. 323, 326 (E.D. Pa. 1997) ("[a] job transfer may constitute an adverse job action even where the pay and benefits are identical if there is a reduction in other terms, conditions, or privileges of employment.")  See also *Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 844 (D.C. Cir. 2001) (transfer to night shift an adverse employment action where the change in hours interfered with plaintiff's education and made it more inconvenient for him); *Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir. 1986) (change to night shift constituted sufficient evidence of retaliatory job assignment), *overruled on other grounds, Harvey v. Blake*, 913 F.2d 226, 228 n.2 (5th Cir. 1990).

### B.  FMLA Damages.

An FMLA plaintiff must show that she "has been prejudiced by the violation in some way."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).  The Supreme Court in *Ragsdale*

did not suggest, much less conclude, that "prejudice" in the FMLA context is synonymous with "legal damages."  In order to prove that he was "prejudiced" by an FMLA violation, a plaintiff need only demonstrate some harm remediable by either "damages" or "equitable relief." See *Ragsdale* 535 U.S. 81, 89, 122 S.Ct. 1155. ("The remedy is tailored to the harm suffered."); *Anderson v. Discovery Cmmc'ns.*, LLC, 517 Fed.Appx. 190, 198 (4th Cir.2013) ("Such prejudice can be proven by showing that the employee ... suffers some loss in employment status remediable through 'appropriate' equitable relief...."). *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014).

Damages available to the employee for interference with his rights under the FMLA include:  "two (distinct) categories of remedies: (1) 'damages,' including compensation, benefits, and other monetary losses sustained by reason of the violation, 29 U.S.C. § 2617(a)(1)(A); and (2) '**such equitable relief as may be appropriate, including employment, reinstatement, and promotion**.' 29 U.S.C. § 2617(a)(1)(B) (emphasis added). While the appropriateness of a particular equitable remedy is "left to the trial court's discretion," *Demers v. Adams Homes of Northwest Fla., Inc.*, 321 Fed.Appx. 847, 849 (11th Cir. 2009), the court must consider the individual facts and circumstances of a plaintiff's case." *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014).

9

"[T]he prejudice or harm allegedly suffered by [Cribbs] may well be remediable by reinstatement.  See 29 U.S.C. § 2617(a)(1)(B). The district court may also consider the equitable remedy of 'front pay' for an appropriate period if it determines that reinstatement is not viable in this case. *Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 810–11 (8th Cir. 2013) (front pay is an equitable remedy under the FMLA); *Weatherly v. Alabama State University*, 728 F.3d 1263, 1271 (11th Cir. 2013) ("In deciding whether to award front pay, rather than reinstatement, courts look to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy.")." *Evans v. Books-A-Million*, 762 F.3d 1288, 1297 (11th Cir. 2014).

"[T]he subjective beliefs of the employee and employer are immaterial to the employer's liability on an FMLA-interference claim—although the employer's good faith belief may be relevant to the issue of damages." *Casas v. Sch. Dist. of Hillsborough Cnty.*, 8:13-CV-599-T-17TBM, 2014 WL 2988059 (M.D. Fla. July 2, 2014).

## III. Consolidation Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161, *et. seq*. ("COBRA").

"A civil action may be brought . . . by a participant or beneficiary (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the

plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1) (emphasis added); *see also id.* § 1132(a)(3) (permitting participants to obtain equitable relief).

ERISA authorizes penalties of up to $100 per day for COBRA violations. 29 U.S.C. § 1132(c)(1), but that penalty has been adjusted by 29 C.F.R. § 2575.502c-1, establishing the maximum amount of the penalty at $110 per day. "The penalty under § 1132 is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002). Prejudice to the plaintiff is an important factor in this analysis. *See Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir. 1990), *abrogated on other grounds by*, *Murphy v. Reliance Stand. Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001). Bad faith or gross negligence is also relevant in this inquiry. See *Disanto v. Wells Fargo & Co.*, 2007 WL 2460732, at *15; see also *Chestnut v. Montgomery*, 307 F.3d 698, 704 (8th Cir. 2002) ("The employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty."). *Evans v. Books-A-Million*, 762 F.3d 1288, 1300 (11th Cir. 2014) (Court acted within its discretion in awarding a $75.00 per day penalty.  Attorney fees and expenses of litigation may be awarded.)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

STEPHEN R. CRIBBS,                    )
                                      )
             Plaintiff,               )
                                      )
v.                                    )
                                      ) CIVIL ACTION NO.: 4:11-CV-00263
NFI NETWORK LOGISTIC                  )                    WTM-GRS
SOLUTIONS, LLC,                       )
                                      )
             Defendant.               )

**Exhibit 2**
**To the Consolidated Pre-Trial Order**

**<u>Defendant's Memorandum of Authorities</u>**

ADEA

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA")

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show: (1) he belonged to a protected class; (2) held the proper job qualifications; (3) suffered an adverse employment action; and (4) that his employer replaced him with someone substantially younger. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

1358354.1

Direct evidence of discrimination is evidence which conclusively shows that an employee was discriminated against, without any inference or presumption. *Bradley v. Pfizer, Inc.*, 440 Fed.App'x. 805, 807 (C.A.11, 2011).  "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id*.

Absent direct evidence, the familiar *McDonnell Douglass* burden-shifting framework applies to retaliation claims.  *Crawford v. Carroll*, 529, F.3d 961, 975-976 (11th Cir.2008). In the absence of direct evidence, Plaintiff must establish a prima facie case of disability discrimination utilizing the familiar burden shifting framework found in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1375 (11th Cir.1996).

In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion.   *Jameson v. Arrow Co.,* 75 F.3d 1528 (C.A.11 1996).

1358354.1

Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself" are not direct evidence of improper discrimination. *Bradley v. Pfizer, Inc.*, 440 Fed.App'x. 805, 808 (C.A.11, 2011).

The law developed in both the ADA and ADEA is applied interchangeably. *Bass v. Lockheed Martin Corp.*, 287 F. App'x 808, 810 (11th Cir.2008) (*citing Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir.2001)).

FMLA

Family Medical Leave Act, 29 U.S.C. § 2601, et. seq. ("FMLA").

Family and Medical Leave Act of 1993, §§ 102(e), 104(a)(1, 3), 29 U.S.C.A. § 2612(e), 2614(a)(1, 3); 29 C.F.R. §§ 825.216, 825.303.

In order to establish a claim of interference, a plaintiff must show by the preponderance of the evidence that he was entitled to a right under the FMLA that was denied by his employer. *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir.2001); *Worst v. Glynn County School Dist.*, 2012 WL 1068135, *5 (S.D.Ga., 2012).

The FMLA only requires an employer to restore an employee returning to work from FMLA leave to a position with "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a).

Because the position into which Plaintiff was placed after his FMLA leave was equivalent in the title, pay, and benefits, NFI complied with FMLA.  See *Lampley v. IMS Management Services, LLC,* 21 Fed.Appx. 93 (C.A.11, 2011)(where summary judgment was granted on an FMLA interference claim where an employee had the same title, pay, and benefits even though he was moved to a different location upon his return from FMLA leave).

A limitation on an employee's FMLA right to be restored to the same or equivalent position is that an employee is not entitled to any greater right than would have existed had the employee not exercised an FMLA right. 29 U.S.C.A. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a). This limitation is exercised as an affirmative defense that can be established "if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave." *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir.2001).  "An employer can deny reinstatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave."  *Martin v. Broward County Pub. Sch*., 543 F.3d 1261, 1267 (11th Cir.2008).

Any argument that Plaintiff's FMLA leave caused the transfer because the decision to make the transfer was based on information discovered during his FMLA leave is "legally incorrect and logically unsound."  *Schaaf v. Smithkline Beeecham Corp.*, 602 F.3d 1236, 1242 (2010).  The fact that the FMLA "leave permitted the employer to discover problems cannot logically be a bar to the employer's ability to fire the deficient employee."  *Id*. (quoting *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir.2001).  In the *Schaaf* case, *supra*, the Court of Appeals affirmed a district court's summary judgment ruling in favor of the employer on plaintiff's FMLA interference claim where the evidence showed that the plaintiff was demoted because of managerial ineffectiveness that revealed itself in full only in her absence during FMLA leave.  *Id*. at 1243.

*Kohls v. Beverly Enterprises Wisconsin, Inc.,*259 F.3d 799, 802–06 (7th Cir.2001) (finding no violation of the FMLA where employee was terminated upon return from maternity leave for poor job performance and improper handling of funds, much of which was discovered during the employee's absence; "The fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee.").

*Wu v. Se.-Atl. Beverage Corp.,* 321 F.Supp.2d 1317 (N.D.Ga.2004). In *Wu*, the district court explained, "[T]he fact that plaintiff's leave is what permitted [the employer] to discover the problems with plaintiff's work performance is of no

consequence. Although one could say that plaintiff might not have been demoted if he had not taken leave (at least not at that time), the leave was not the proximate cause of the demotion." *Id.* at 1341.

Because Plaintiff has not alleged that he suffered economic damages from his change in job duties, his interference claim under the FMLA cannot survive a motion for summary judgment.  *See Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739–40, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) ("[T]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses.").  See *Benz v. West Linn Paper Co.,* 803 F.Supp.2d 1231, 1234  (D.Or., 2011)(where summary judgment was granted on an FMLA interference claim because the plaintiff presented no evidence that he suffered economic damages from his change in job duties).

Affirmative Defense.

Once a plaintiff makes a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Holland v. Gee*, 677 F.3d 1047, 1055 (C.A.11 Fla., 2012)(citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). "The employer need not persuade the [finder of fact] that it was actually motivated by the proffered reasons." *Id*. (quotation marks omitted). However, "the defendant must clearly set

forth ... the reasons for the plaintiff's rejection." *Id.* (citing*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 256 n. 8, 101 S.Ct. 1089, 1095 n. 8, 67 L.Ed.2d 207 (1981).

Should Plaintiff establish a prima facie case, Defendant then bears the burden of producing a legitimate, non-discriminatory reason for the adverse employment action. *Cooper v. S. Co.,* 390 F.3d 695, 732 (11th Cir.2004). If the defendant meets this burden, the Plaintiff must then point to evidence that the proffered reason is merely pretextual. *Crawford v. Carroll,* 529 F.3d 961, 976 (11th Cir.2008).

 Under the *McDonnell Douglas* framework, once the employer identifies a legitimate, non-discriminatory reason for its decision, the presumption of discrimination disappears and the burden shifts back to the plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision." *Holland v. Gee*, 2012 WL 1292342, *3 (11th Cir. 2012)(citations omitted).

Under this burden-shifting scheme, Plaintiff must establish a prima facie case for age discrimination under the ADEA by demonstrating that: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified to do the job; and (4) he was replaced by a younger

individual. *Chapman,* 229 F.3d at 1024. Once Plaintiff does so, there is a rebuttable presumption of discrimination. The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for its action. *Watkins v. Sverdrup Tech., Inc.,* 153 F.3d 1308, 1314 (11th Cir.1998). This burden on the employer is "exceedingly light" and one of production, not proof. *Perryman v. Johnson Prods. Co.,* 135 F.3d 1428, 1432 (11th Cir.1998).   Should the employer produce a legitimate non-discriminatory reason, the *McDonnell Douglas* presumption drops from the case and the plaintiff has an opportunity to discredit the defendant's proffered explanation. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). To survive summary judgment, a plaintiff must produce evidence for a "reasonable factfinder to conclude that each of the employer's proffered non-discriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037.

So long as the proffered reason is "one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. Additionally, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.' " *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.,* 446 F.3d 1160, 1163 (11th Cir.2006) ( *quoting St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515,

113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Courts must be mindful that they do not sit as "super-personnel department[s] that reexamine [ ] [business] decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's management, the ADEA does not interfere. Rather, our inquiry is whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (quotations omitted). Indeed, an employer may terminate an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir.1984).

To rebut an employer's legitimate nondiscriminatory reasons for its adverse action, the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1290 (11th Cir.1998). In order to rebut the stated reasons for NFI's disciplinary actions, it is "not enough for Plaintiff to simply disagree with the wisdom behind Defendant's business decisions, and it is not appropriate for this Court to reexamine such decisions. *Jeudy v. Holder*, 2011 WL 5361076, *11 (*citing Elrod v. Sears, Roebuck and Co*., 939 F.2d 1466, 1470 (11th Cir.1991)("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."). "In order to

1358354.1

avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman v. AI Transp*., 229 F.3d 1012, 1024–25, 1037 (11th Cir.2000).

*Jeudy*, 2011 WL 5361076 at *12 (citing *Chapman v. AI Transp*., 229 F.3d 1012, 1024–25, 1037 (11th Cir.2000); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529, 1539-1543 (11th Cir.1997).

COBRA

Consolidation Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161, et. seq. ("COBRA").

"A civil action may be brought . . . by a participant or beneficiary (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1) (emphasis added); *see also id.* § 1132(a)(3) (permitting participants to obtain equitable relief). "[C]ourts tend to interpret ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to the medical expenses incurred minus any deductibles and premiums that the beneficiary would have had to pay for COBRA coverage." *Gomez v. St.*

*Vincent Health, Inc.*, 2010 WL 1854106, at *3 n.3 (S.D. Ind. May 6, 2010); *see also Fisher v. Trutech, Inc.*, 2006 WL 3791977, at *3 (M.D. Ga. Nov, 17, 2006); *Hamilton v. Mecca, Inc.*, 930 F.Supp. 1540, 1555 n. 24 (S.D. Ga.1996).

"Plaintiff, by virtue of [Defendant]'s offer, has been given an opportunity to insure the COBRA medical expenses retroactively.  Should he accept that offer, the medical expenses, if covered, will be paid and he will not incur a loss.  Should he decline the offer, the decision would constitute a failure to mitigate damages which would make her ineligible to recover the medical expenses as actual damages." *Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901, 907 (W.D. Mich. 2002).

29 U.S.C. § 1132(c)(1); *see also* 29 C.F.R. § 2575.502c-1 (establishing the maximum amount of the penalty at $110 per day).  "The penalty under § 1132 is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002).  Prejudice to the plaintiff is an important factor in this analysis.  *See Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 847 (11th Cir.1990), *abrogated on other grounds by*, *Murphy v. Reliance Stand. Life Ins. Co.*, 247 F.3d 1313 (11th Cir.2001).  Bad faith or gross negligence is also relevant in this inquiry.  See *Disanto v. Wells Fargo & Co.*, 2007 WL 2460732, at *15; see also *Chestnut v. Montgomery*, 307

F.3d 698, 704 (8th Cir. 2002) ("The employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty.").